The majority asserts that without a reasonable belief that there were third parties in the house, the conclusion that the evidence was in danger of imminent destruction is unfounded. However, there was no trespass when officers were in the front room as Lewis dashed up the stairs. I would find at that point that they knew there was a third party in the house who could destroy any other narcotics, because they knew Lewis resided there and they had not yet seen him inside or outside the house. *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 585-86 (6th Cir. 1998).

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0383P (6th Cir.)
File Name: 00a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                                          No. 98-3619

WALTER LEWIS,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-00323—Paul R. Matia, Chief District Judge.

Argued: October 26, 1999

Decided and Filed: November 3, 2000

Before: MARTIN, Chief Judge; SUHRHEINRICH and
SILER, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** James R. Willis, WILLIS, BLACKWELL & ROGERS, Cleveland, Ohio, for Appellant. Christa D. Brunst, ASSISTANT U.S. ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** James R. Willis, WILLIS, BLACKWELL & ROGERS, Cleveland, Ohio, Myron P. Watson, Cleveland, Ohio, for Appellant. Christa D. Brunst,

ASSISTANT U.S. ATTORNEY, Cleveland, Ohio, for Appellee.

MARTIN, C. J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. SILER, J. (pp. 7-8), delivered a separate dissenting opinion.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Chief Judge. On February 11, 1998, Walter Lewis was convicted of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and (2). He was sentenced to mandatory life imprisonment as a three-time convicted felon. Prior to trial, Lewis filed a motion to suppress which the district court denied. He appeals the district court's denial of his motion to suppress as well as his life sentence. We reverse.

In early December, 1996, an informant began providing officers from the Cleveland Police Department Narcotics Unit information that Walter Lewis and his brother, Edward Julian, stored and sold narcotics out of their home at 10105 Westchester Avenue, Cleveland, Ohio. On Saturday, December 21, the informant told the officers that a large drug delivery was going to be made between 3:00 and 4:00 p.m. that day. The informant told the police that Edward Julian would make the delivery down the street from the house driving a new black Jeep Cherokee, license number ___-196. Based on this information, police established surveillance of the house.

At 3:35 p.m., a black Jeep Cherokee, license number WMD-196, pulled into the driveway of 10105 Westchester. As they drove by to verify the license plate, the police saw Julian get into the Jeep and leave the driveway. Julian drove approximately one block down the street where he stopped

---

**DISSENT**

---

SILER, Circuit Judge, dissenting. I would affirm the decision of the district court in denying the motion to suppress.

As related by the majority, the officers had information that Walter Lewis and Edward Julian stored and sold narcotics out of their home in Cleveland. The informant further advised the officers that Julian would be making a large drug delivery on December 21. This was corroborated when the officers saw the Jeep pull into the driveway of the residence and Julian got into the Jeep and left, proceeding down the street where he engaged in the crack transaction with Antonio Clark. Therefore, at that point, officers had probable cause, or at least a reasonable suspicion, that there were more drugs in the house, as the informant had said that the narcotics were stored and sold out of the house, and they had not seen Lewis, the other suspect. Therefore, they had the right to at least knock on the door of the house to see if there was anyone else, in particular, Lewis, inside.

The majority suggests that from *United States v. Sagineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988), the officers could not make a warrantless entry, unless they believed that there were third parties inside the dwelling who might be involved in the destruction of evidence. Nevertheless, there is no illegal search when an officer knocks on the door of a house. The door was opened by a child who allowed them to come into the front room. Unlike the officers in *Wong Sun v. United States,* 371 U.S. 471, 482 (1963), the police here identified themselves at the door and were lawfully admitted. When they immediately saw Lewis rush up the steps, they had probable cause and exigent circumstances to justify a warrantless search, at least to the extent of following Lewis up the steps before they found the crack in open view.

Without a reasonable belief that there were third parties in the house, the belief that any evidence presumed to be inside the house was in danger of imminent destruction is unfounded. Having failed to establish probable cause or exigent circumstances prior to entering 10105 Westchester, the warrantless search of the house was unjustified. Furthermore, the government cannot rely on the consent form signed by Marjorie Julian and Walter Lewis to justify the search after the fact. The evidence obtained from the search should have been suppressed.

Accordingly, we REVERSE the decision of the district court and REMAND the case for a new trial.

across the street from a black Chevrolet automobile that was parked in front of 10005 Westchester. Antonio Clark exited the Chevrolet and entered the front passenger seat of the Jeep. The officers saw the two individuals exchange something and concluded that a drug deal was in progress.

As the officers pulled up to the Jeep to investigate, they observed Julian toss several large rocks of cocaine base into the back seat of the Jeep and Clark shove something into his pants. The officers approached the Jeep, saw the cocaine base in the back of the Jeep, and arrested both Clark and Julian.

Officer Thomas Shoulders then told officers Jim Kooser and Mark Mazur to return to 10105 Westchester and "secure" the house. There is conflicting testimony as to what happened next. According to the testimony of Mazur, he and Kooser knocked on the side door of 10105 Westchester. A child answered the door. The detectives identified themselves and asked if the boy's parents or any other adult was in the house. The boy said that his mother was out shopping. The officers asked the boy if they could enter. He responded, "Come on in."

The officers testified that, once inside the house, they immediately observed Lewis running up the stairs to the second floor. Fearing that Lewis might be attempting to get a weapon or destroy evidence, they pursued him up the stairs. Lewis ran into a bedroom, slammed the door and held it shut. The officers identified themselves and asked to enter the room. They then forced their way into the room and observed a large quantity of cocaine base and a scale in the bedroom. The officers then arrested Lewis.

The owner of the house, Marjorie Julian, was paged, and she returned home. The officers described what had happened and explained the Consent to Search form they were asking her to sign. She signed the form. Marjorie Julian told the police that the bedroom belonged to Lewis. After the officers explained the consent form to Lewis, he also signed the form. The officers then searched the bedroom. Lewis then told the police that a weapon was located on a shelf in

the room. The search revealed a .38 caliber revolver. In addition to the weapon and the cocaine base, the officers seized a scale, plastic baggies, a razor, and personal papers from the room.

The defense presented five witnesses. Craig Alford testified that he went to the Julian house on December 21 to tell the family members that the police were "harassing" Edward. According to Alford, the police barged in the side door without knocking, told him to shut up, and ran into the dining room and up the stairs. Marshall Lewis, the nephew of Edward Julian and Walter Lewis, testified that Alford arrived at the house on that day and told him that Edward Julian had been arrested on the street. Marshall Lewis testified that, soon thereafter, five or six officers burst into the house. He testified that he asked them, "What the F you doing in my grandmother's house?" Walter Lewis testified that he was asleep in his locked bedroom when the police kicked the door in. As the police were coming through the door, he testified that he jumped up to "go for [his] gun." According to Lewis, the police then located the drugs in a suitcase under the bed.

Karlene Lewis, sister to Edward Julian and Walter Lewis, testified that the officers threatened to tear the house apart if Marjorie Julian and Walter Lewis did not sign the consent form. Marjorie Julian also testified that she signed the consent form because the officers told her that if she did not sign, they would get a search warrant, tear up the house, and board up the house. Walter Lewis testified that he signed the form because the police told him that they were going to board up the house and he did not want the house taken away from his mother.

We review a district court's legal conclusions with respect to a motion to suppress *de novo*. *See United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996). However, the district court's factual findings will be disturbed only if they are clearly erroneous. *See id.* The government bears the burden of proving exigent circumstances existed. *See id.*

Although warrantless entries into a person's home are *per se* unreasonable under the Fourth Amendment, the Supreme Court has held that certain exigent circumstances may justify a warrantless entry. *See United States v. Straughter*, 950 F.2d 1223, 1229-30 (6th Cir. 1991) (citing *Roaden v. Kentucky*, 413 U.S. 496 (1973); *Katz v. United States*, 389 U.S. 347 (1967)). A warrantless entry to prevent the destruction of evidence may be permissible if it is based on probable cause and supported by exigent circumstances. *See United States v. Delguyd*, 542 F.2d 346, 350-51 (6th Cir. 1976). We have adopted a two-pronged test to determine when the possibility of destruction of evidence will justify a warrantless entry into a person's home. *See United States v. Sagineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988). According to *Sagineto-Miranda*, a warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: "1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *Id*. at 1512.

In this case, the police officers had no reason to believe that third parties were inside the house at the time of the transaction. The informant indicated that there would be a drug transaction outside the house. Although this information was corroborated by the officers surveilling the house, the informant gave no indication that anyone would be in the house at the time of the transaction. The officers saw Julian leave the house. They did not see him or anyone else enter the house. They did not see anyone through a window of the house nor did they hear anything that would indicate the presence of anyone in the house. The officers who entered the house were aware that Julian had been arrested, but they had no knowledge of Lewis's whereabouts and no reason to assume that he was inside the house. The uncorroborated information that Lewis and Julian were partners in a drug business operating out of 10105 Westchester does not support the reasonable belief that anyone was home at the time of the transaction.