[Cite as *State v. Norman*, 2014-Ohio-5084.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2014-02-033 |
| | : | O P I N I O N |
| - vs - | | 11/17/2014 |
| | : | |
| BRANDYN M. NORMAN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13CR29142

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Thomas W. Kidd, Jr., P.O. Box 231, Harveysburg, Ohio 45032, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Brandyn M. Norman, appeals from his conviction and sentence in the Warren County Court of Common Pleas for the illegal cultivation of marijuana, trafficking in marijuana, possession of criminal tools, and possession of drugs.

**I.  FACTS**

{¶ 2}  On April 5, 2013, probation officer Mary Velde, her supervisor, Bruce Snell, and Hamilton Township Police Officer Darcie Workman went to probationer Bradley Andre's

house in Maineville, Ohio to conduct a search of the premises after receiving a report that Andre was in violation of the terms of his probation by having firearms and marijuana plants in his home. Andre lived in a single family, two-story home located in a residential neighborhood. Upon entering Andre's home, Velde and Workman detected a strong odor of fresh marijuana. Velde's search of the main floor and upper floor of Andre's home did not uncover any marijuana or firearms. When Velde went to search the basement of Andre's home, she was informed by Andre that he was currently renting the basement out to two people, appellant and Henry Hartsock. The door to the basement was secured by both a key lock and by an additional number-pad activated bolt lock. Andre claimed he did not have a key or know the combination code to open the locks to the basement. At this time, Andre admitted that he had "stuff" he kept downstairs, including a gun safe. Andre claimed he did not know whether or not there were any guns in the safe.

{¶ 3} While Andre was informing Velde and Workman that he could not open the basement door, one of the basement residents, Hartsock, arrived at the premises. After questioning by Velde, Hartsock admitted there was marijuana in the basement, but he refused to consent to a search of the basement and refused to open the basement door. The whereabouts of appellant were unknown at this time.

{¶ 4} Eventually, Velde decided to take the basement door off its hinges in order to gain access to the basement. Velde, followed by Workman, entered the basement and found Andre's personal belongings in an open area to the left of the stairs. In addition, Velde observed marijuana plants and evidence of a grow operation in plain view. At this point in time, the Hamilton Township Police Department took over the scene and seized over 100 marijuana plants.

{¶ 5} Appellant, who was not at the scene, was later arrested and indicted on the illegal cultivation of marijuana in violation of R.C. 2925.04(A) (count one) and trafficking in

marijuana in violation of R.C. 2925.03(A)(2) (count two), both felonies of the second degree as the offenses were committed in the vicinity of a juvenile and the amount of the drug equaled or exceeded 5,000 grams but was less than 20,000 grams. Appellant was also indicted on the possession of the drug buprenorphine, a schedule III controlled substance, in violation of R.C. 2925.11(A), a felony of the fourth degree as the amount of the controlled substance equaled or exceeded the bulk amount but was less than five times the bulk amount (count three), possession of the drug diazepam, a schedule IV controlled substance, in violation of R.C. 2925.11(A), a misdemeanor of the first degree (count four), possession of dangerous drugs in violation of R.C. 4729.51(C)(3), a misdemeanor of the first degree (count five), and possession of criminal tools in violation of R.C. 2929.24(A), a felony of the fifth degree (count six).

{¶ 6} In September 2013, appellant moved to suppress the evidence seized from the basement, arguing that the search of the basement violated his Fourth Amendment rights as the search occurred without a warrant or consent. A hearing on the motion to suppress was held on December 18, 2013, at which time the state argued "exigent circumstances" justified the warrantless search of the basement. The state also argued the search of the basement was lawful as Andre, pursuant to the terms of his probation, had consented to a search of his residence, which included the basement of his home where he stored personal belongings. In support of its position, the state presented testimony from Velde and Workman.

{¶ 7} At the hearing, Velde testified that she has worked as a probation officer for the Warren County Court for the last ten years. She became Andre's probation officer following his convictions for domestic violence and operating a vehicle while under the influence of alcohol. Due to his domestic violence conviction, Andre was prohibited by law from possessing a firearm. Furthermore, as part of Andre's conditions of probation, Andre was to (1) refrain from the commission of any criminal offense, (2) not use, possess, or distribute

any illegal narcotics, drugs, or controlled substances, and (3) consent to a search of his person, automobile, or residence at any time. Andre was also required to notify Velde about any individuals that were living at his residence. As of July 2012, the only individual Andre indicated was living in his home was his son, Zach. Andre never reported that he rented out his basement to appellant and Hartsock.

{¶ 8} Velde testified that on April 5, 2013, she and her supervisor met Workman at Andre's home to conduct a search of the premises after Velde received an anonymous tip that Andre had firearms and marijuana plants in his basement. Workman arrived at Andre's residence in uniform and in a marked police cruiser. The three approached Andre's home and knocked on the front door. Roughly five minutes later, Andre, who had recently undergone surgery and was in a wheelchair, opened the door. Velde immediately smelled "an aroma of marijuana."

{¶ 9} Velde testified she searched the main floor and upper floor of Andre's home, but found nothing suspicious or concerning. While she was searching these two floors, additional Hamilton Township police officers arrived at the residence. Velde then went to search the basement of Andre's residence and, at this time, was informed by Andre that he was renting the basement out to "two guys." Andre did not provide the renters' names or indicate when their tenancy had begun. At some point, Andre produced a copy of an "Agreement to Rent or Lease," but Velde stated she never looked at the document.

{¶ 10} The entrance to the basement was on the main floor of the home, in a hallway separating the kitchen and foyer. Velde testified the door did not have any markings or apartment numbers on it indicating it was a separate unit. The door was an interior door with two locks on it. Andre told Velde he did not have a key to the key lock and did not know the combination to the number-pad lock. Andre then admitted to Velde that he did have some "stuff," including a gun safe, down in the basement. Andre could not recall whether the gun

safe contained firearms.

{¶ 11} While Velde was attempting to gain access to the basement, Hartsock arrived. Hartsock was "fidgety" and "nervous," and demanded to know why Velde was attempting to get in the basement. Upon questioning, Hartsock admitted he had marijuana downstairs, and he offered to go down, get it, and bring it up to the officers. Due to concerns about the officers' safety and the possible destruction of evidence, Hartsock was not permitted to go downstairs. Velde explained that the whereabouts of appellant, the second individual residing in the basement, were unknown at this time. Velde "kind of thought maybe he [was] in the basement * * * [but] wasn't sure." She had concerns about her and the other officers' safety and with the possible tampering of evidence. Officers at the scene expressed their belief to Velde that they could not "take the door down, but probation could." Following this conversation, Velde removed the hinges from the door and gained access to the basement. Velde described the basement as a large open area, with a kitchen, a bathroom, and a separate bedroom. Once Velde entered the basement, she immediately saw Andre's belongings grouped together in an area to the left of the stairs. Velde testified that numerous marijuana plants and grow lights were also plainly visible upon entering the basement.

{¶ 12} On cross-examination, Velde admitted that prior to taking the basement door off its hinges, she did not know whether appellant or anyone else was in the basement. Velde had not heard any noises or "shouts" coming from the basement and had not observed anyone entering or exiting the basement. Although there was a concern for officer safety and the possible destruction of evidence, Velde personally "didn't really think that there was anyone in the basement, just for the fact that the door was locked on the outside." She stated, "I just figured it was locked, so how could somebody get out if it was locked, you know, to myself, I didn't think anybody was down there."

{¶ 13} Workman also testified about the events that occurred on April 5, 2013.

- 5 -

Workman testified that she was dispatched to Andre's home as backup for Velde. Upon arriving at the residence and being informed of possible firearms in the home, Workman requested backup. Three additional officers arrived at Andre's house while Velde conducted a search of the residence.

{¶ 14} Workman testified she accompanied Velde into Andre's house and, once inside the home, immediately smelled a strong odor of fresh marijuana. The fact that marijuana was present in the residence was later admitted to and verified by Hartsock. Hartsock's arrival at the residence and his subsequent admission to possessing marijuana in the basement caused Workman to become concerned about appellant's location. She believed it was possible appellant was in the basement, where she had been told firearms were located. She was also concerned that if appellant was in the basement, he could be destroying evidence.

{¶ 15} Workman testified that Velde made the decision to take down the basement door. She explained that prior to Velde's actual removal of the door, Workman's superior officer, Lieutenant Johnson, advised Velde that because it was her decision to go downstairs, Hamilton Township police officers could not help take the door down. Once the basement door was removed, Workman followed Velde into the basement as backup. She immediately saw the marijuana plants and grow operation and, thereafter, the Hamilton Township Police Department took over the scene.

{¶ 16} On cross-examination, Workman admitted that prior to the removal of the basement door, she had not heard any noise coming from the basement. However, she stated that she had reason to believe someone was in the basement as only one of the two individuals residing in the basement had been accounted for. She also stated that her "sole reason" for going down into the basement with Velde was to "provide backup."

{¶ 17} Following Workman's testimony, the defense called Hartsock and Andre as

witnesses. Hartsock testified he and appellant had entered into a rental agreement with Andre which required the two men to pay Andre one-half of the monthly utilities for the house, which was approximately $600 to $700 a month, in exchange for use of the basement. Hartsock considered the basement a separate residence, accessible only by himself and appellant as they were the only two individuals with keys to the key lock and the combination to the number-pad lock.

{¶ 18} Hartsock stated he knew Andre was on probation. He also testified that Andre knew Hartsock and appellant were growing marijuana in the basement as Andre had observed the grow lights, grow soil, and filtration system being carried into the basement. Although Andre knew about the grow operation, he never went down into the basement. Further, Hartsock explained that although Andre had "various little items that were of no significance" in the basement, as well as larger, heavier items that could not be physically moved out of the basement, Andre never came downstairs to use or access these items. The larger items that Andre stored downstairs included a pinball machine, refrigerator, dresser, and gun safe.

{¶ 19} With respect to the events of April 5, 2013, Hartsock testified that he and appellant were in the basement when Velde, Workman, and Snell arrived at Andre's residence. The two men climbed out of a window in the basement and went around the back of the home to avoid detection. Hartsock testified that he and appellant did not normally use the window to enter or leave the basement. Hartsock returned to the home while it was being searched by Velde. At this time, Hartsock admitted there was marijuana in the basement. He refused, however, to open the basement door or to consent to a search of the basement.

{¶ 20} Andre was next to testify. He stated that Hartsock and appellant had "exclusive use" of the basement area pursuant to their rental agreement. Andre stated the basement door had two locks on it, and he did not have a key to the key lock or know the combination

to the number-pad lock. He also testified that he was unaware of the marijuana grow operation in the basement and stated he "never" went down into the basement.

{¶ 21} After receiving the foregoing testimony, the trial court took appellant's motion to suppress under advisement. On January 2, 2014, the trial court issued a decision denying appellant's motion. The trial court did not address the state's exigent circumstances argument, but rather determined that the search of the basement was lawful given Andre's actual consent, or apparent authority to consent, to the search. In so holding, the court found, in relevant part, the following:

> [T]he facts of this case are somewhat different from a standard landlord-tenant relationship. At least one of the tenants—Hartsock—knew Andre was on probation. Therefore, he has a diminished expectation of privacy in the residence. Second, the landlord-tenant relationship is suspect. Andre knew the marijuana grow operation was in the basement. He saw them bring it in, and there was an understanding between Andre, Hartsock, and the [appellant] that the utilities would be exorbitant, in no small part due to the grow operation. Third, [Andre] maintained personal property in the basement, specifically including the gun safe which was the object of Officer Velde's search. Based on this evidence, the court finds * * * Andre had the actual authority to consent to the search and did consent.

> Even assuming, *arguendo*, Andre did not have actual authority to consent, the Court finds he possessed the apparent authority to do so. A warrantless entry is valid if the police reasonably believe, although incorrect, that the person giving consent possessed common authority over the premises. * * * The Court finds that Officer Velde's observations, as viewed against an objective standard, are sufficient for a person of reasonable caution to believe Andre had authority over the premises.

{¶ 22} Following the trial court's denial of his motion to suppress, appellant entered a no contest plea on all counts included in the indictment. The trial court sentenced appellant to three years of community control and imposed a $7,500 mandatory fine.

{¶ 23} Appellant appealed, raising two assignments of error.

## II. ANALYSIS

**A. Motion to Suppress**

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO SUPPRESS.

{¶ 26} In his first assignment of error, appellant argues the trial court erred by denying his motion to suppress. Specifically, appellant contends the trial court erred when it found Andre's consent or apparent authority to consent justified the warrantless search of the basement. The state, on the other hand, contends the trial court appropriately denied appellant's motion to suppress as the record reflects that Velde had reasonable grounds to believe Andre had violated the terms of his probation by possessing marijuana and firearms in his basement. The state further argues that Andre had common authority, or appeared to have such authority, over the basement so that his consent to a probation search encompassed the basement. Alternatively, the state argues that even if Andre lacked the authority to consent to the search of the basement, Velde and Workman's actions in entering the basement without a warrant were lawful pursuant to the exigent circumstances exception to the warrant requirement.

{¶ 27} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Cochran,* 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the

- 9 -

appropriate legal standard." *Cochran* at ¶ 12.

### 1. Probation Search

{¶ 28} The Fourth Amendment to the United States Constitution assures the "right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures." "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371 (1980). However, because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). One recognized exception to the warrant requirement occurs within the context of a probation search. *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587 (2001). Under the probation search exception, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* at 121. *See also* R.C. 2967.131(C) (authorizing a probation officer to conduct a warrantless search of a probationer's person or home if the officer has "reasonable grounds" to believe the probationer failed to abide by the law or by the terms of his probation); *State v. Cowans*, 87 Ohio St.3d 68, 76 (1999) (recognizing "a probation officer may search a probationer's home without a warrant and upon less than probable grounds").

{¶ 29} Another recognized exception to the warrant requirement exists when an individual consents to a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041 (1973) ("a search conducted pursuant to a valid consent is constitutionally permissible"); *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105 (2002); *State v. Comen*, 50 Ohio St.3d 206, 211 (1990). The Ohio Supreme Court has recognized that probationers and parolees may validly consent in advance to warrantless searches in

exchange for the opportunity to avoid service of a prison term or to shorten a prison term. *State v. Benton*, 82 Ohio St.3d 316, 321 (1998). "A warrantless search performed pursuant to a condition of [probation] requiring a [probationer] to submit to random searches of his or her person, motor vehicle, or place of residence by a [probation] officer at any time is constitutional" as a consent search. *Id.* at syllabus. *See also Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164 (1987); *State v. McCain*, 154 Ohio App.3d 380, 2003-Ohio-4890 (4th Dist.) (finding that "[t]here is no material difference between probationers and parolees with regard to constitutional guarantees").

{¶ 30} In the present case, appellant concedes that a warrantless search of a probationer is "generally valid and not an infringement of the Fourth Amendment." Appellant, therefore, does not dispute the lawfulness of Velde and Workman's initial entry into Andre's home or Velde's subsequent search of the main and upper floors of the home. Rather, appellant's dispute arises with Velde's decision to force entry into the basement after being informed that the basement had been leased to appellant and Hartsock. Appellant contends that the basement was a "separate leasehold" or unit and that Andre, in his role as landlord, could not consent to a search of this separate unit. Appellant further asserts that even if the basement was not treated as a "separate leasehold," Andre could not have consented to a search of the area because Andre lacked common authority over the basement.

a. Landlord-Tenant Relationship

{¶ 31} Appellant is correct in his assertion that a landlord cannot validly consent to the search of a tenant's apartment for Fourth Amendment purposes. *See Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776 (1961); *State v. Callan*, 8th Dist. Cuyahoga No. 95310, 2011-Ohio-2279, ¶ 18. However, where a homeowner rents out a room or rooms in his or her residence to another, the homeowner-landlord retains the right to consent to a search of the common areas shared by all residents. *See State v. Butts*, 2d Dist. Montgomery No.

22105, 2008-Ohio-2587, ¶ 8 ("[w]hile a landlord cannot consent to the search of a tenant's apartment, the landlord may consent to the search of common areas"); *State v. Chuey*, 9th Dist. Medina No. 2937-M, 2000 WL 487738, *3-6 (finding the owner of a boarding house could not consent to a search of bedroom rented out by another, but could consent to a search of the common areas used jointly by the inhabitants).

{¶ 32} In the present case, the trial court recognized that Hartsock and appellant had not entered into a "standard landlord relationship." Implicit in the trial court's decision denying the motion to suppress was that Andre, appellant, and Hartsock were cotenants residing together in the same unit, albeit in separate areas. The evidence presented at the motion to suppress hearing supports this finding. Testimony from the state demonstrated the residence was a single family home with only one address and one mailbox. There was no separate, outside entrance into the basement. Rather, the only entrance to the basement was located on the main floor of the residence. To enter the basement, an individual had to first enter Andre's home, walk through the hallway separating the kitchen and foyer, and open an interior door that had steps leading down into the basement. Given these facts, we find that the trial court did not err by treating Andre, Hartsock, and appellant as cotenants residing together under one roof rather than treating the basement as a separate unit.

{¶ 33} As Andre, Hartsock and appellant were cotenants residing in the same home, the issue becomes whether Andre's consent to search, as a condition of his probation, extended into the basement to authorize a warrantless search of the area.

b. Cotenant Relationship

{¶ 34} Although the United States Supreme Court has not considered the issue of a cotenant's consent to search within the context of a probation search, the Supreme Court has held that a warrantless search of a residence is lawful where consent has been obtained from either (1) a fellow occupant who shares common authority over property, when the

suspect is absent, or (2) from a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant. *See United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988 (1974); *Illinois v. Rodriguez,* 497 U.S. 177, 186, 110 S.Ct. 2793 (1990); *Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515 (2006).

i.   Actual Authority to Consent

**{¶ 35}** "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock* at 170. Common authority is not to be implied from a mere property interest, but from "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171, fn.7. The burden of establishing that a third party possesses common authority to consent to a search rests with the state. *State v. McCartney*, 12th Dist. Clinton No. CA2003-09-023, 2004-Ohio-4781, ¶ 14, citing *Rodriguez* at 181.

**{¶ 36}** In the present case, we find that the trial court erred as a matter of law in determining that Andre had common authority over the basement. The evidence presented at the hearing demonstrated that although Andre owned the residence, he had entered an agreement to lease the basement to appellant and Hartsock beginning in January 2013, three months before the search at issue. As the trial court noted, the lease agreement entered into by the parties called for Hartsock and appellant's "exclusive use" of the basement in exchange for payment of half of the monthly utility bills. Further, even though Andre stored personal property in the basement that was too heavy to move, including the gun safe, there was no indication that Andre was using such property or that he could access the property without the permission of appellant or Hartsock. In fact, Hartsock and Andre

both testified that Andre not only never went into the basement, but Andre was also physically incapable of entering the basement as he lacked a key to the key lock and the combination to the number-pad lock. Based on these facts, we conclude the state failed to establish that Andre had joint access or control for most purposes over the basement. Consequently, we find that Andre could not provide actual consent to a search of the basement.

{¶ 37} We must, therefore, determine whether Andre appeared to have common authority over the basement area.

## ii. Apparent Authority to Consent

{¶ 38} As we have previously recognized, "[e]ven if a third party does not possess actual common authority over the area that was searched * * * the Fourth Amendment is not violated if the police relied in good faith on a third party's' apparent authority to consent." *McCartney*, 2004-Ohio-4781 at ¶ 15, citing *Rodriguez* 497 U.S. at 188. However, the mere existence of a statement of consent from someone purportedly having authority over the premises is not always enough. *See Rodriguez* at 188 ("[e]ven when the invitation [to enter and search] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry"). A search consented to by a third party without actual authority over the premises is valid only if the officer could reasonably conclude from the facts available that the third party had authority to consent to the search. *Id.* at 188-189; *McCartney* at ¶ 15. Whether apparent authority existed must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Rodriguez* at 188, quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868 (1968).

- 14 -

{¶ 39} Here, given the facts surrounding Velde's attempt to enter the basement, we find that a reasonable person would have doubted Andre's right to consent to the search of the basement. At the time Velde decided to make a warrantless entry into the basement, the following facts were before her: (1) Andre, the homeowner, was on probation and had consented to warrantless searches of his residence; (2) Andre had not provided prior notification that anyone other than his son was living in his residence, as required by the terms of his probation; (3) Andre now claimed to have leased the basement out to two individuals, but he did not indicate who the two men were or when their tenancy had begun; (4) Andre was able to produce a written lease to the basement; (5) Andre admitted to having some "stuff," including a gun safe in the basement; (6) Andre claimed he did not have a key to the key lock or know the combination to the number-pad lock and was therefore unable to open the basement door; and (7) Hartsock, one of the men claiming to be a tenant of the basement, refused to consent to a search of the basement. A "man of reasonable caution" would not have relied on Andre's consent, per the terms of his probation, as authoritative under these circumstances. *See Rodriguez*, 497 U.S. at 188; *U.S. v. Kimber*, 395 Fed.Appx. 237, 245 (6th Cir.2010). Andre's statements that he had rented out the basement and could not open the locks to the basement door combined with his production of a written lease, and the presence of one of the cotenants on the scene, created a reason to doubt Andre's authority to consent to a search of the basement. Velde, therefore, should not have acted without further inquiry. *Rodriguez* at 188. Had Velde made further inquiries into the tenancy situation, she would have discovered that Andre lacked common authority over the basement and, therefore, could not render valid consent.

{¶ 40} We therefore find that the trial court erred as a matter of law in determining Andre appeared to possess the authority to consent to a search of the basement. Under the facts of this case, Velde could not reasonably conclude that Andre had common authority

over the basement.

### iii. Cotenant's Assumption of the Risk

{¶ 41} In concluding that Andre did not have actual or apparent authority to consent to a search of the basement we expressly reject the state's argument that appellant, by choosing to live in a home owned by a probationer, assumed the risk that a probation search would encompass *all areas* of the residence.[1]  Rather, we find that that there are limits on what areas a cotenant, regardless of his probation status, may consent to have searched. *See Matlock*, 415 U.S. 164; *Rodriguez*, 497 U.S. 177; *Randolph*, 547 U.S. 103.  We hold that where a cotenant who is not on probation shares a residence with a probationer, the warrantless probation search of the residence must be limited to the common areas the probationer is known to occupy or have joint control over.

{¶ 42} Other courts considering this issue have reached a similar result.  *See People v. Woods*, 21 Cal.4th 668, 981 P.2d 1019 (Cal.1999); *State v. Johnson*, 748 P.2d 1069 (Utah 1987).  In *Woods*, the Supreme Court of California reversed a lower court's decision suppressing evidence obtained against two cotenants who resided in the same home as a probationer.  The probationer, Loza, had agreed as a condition of her probation to submit her residence, a one-bedroom home, to warrantless searches.  *Woods* at 671.  During a probation search, officers found Loza's two roommates, the cotenants Woods and Benson, inside the bedroom with methamphetamine and marijuana.  *Id.* at 672.  The California court, citing the United States Supreme Court's decision in *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988 (1974), found that Loza's consent to a warrantless search per the terms of her probation provided valid consent for the search of the residence as "consent [was] given

---

1. Although the record does not establish that appellant had personal knowledge of Andre's probation status, whether or not appellant knew of Andre's probation status is immaterial to the issue at hand.  Regardless of a cotenant's probation status, an individual living with others maintains an expectation of privacy in those areas of the residence in which he or she retains exclusive use.

by one person with common or superior authority over the area to be searched." *Woods* at 675-676. The court specifically held:

> [W]hether the purpose of the search is to monitor the probationer or to serve some other law enforcement purpose, or both, the search in any case remains limited in scope to the terms articulated in the search clause * * * and *to those areas of the residence over which the probationer is believed to exercise complete or joint authority. United States v. Matlock*, supra, 415 U.S. at pp. 170-171. * * *
>
> * * *
>
> [O]ur holding is not intended to legitimize unreasonable searches with respect to nonprobationers who share residences with probationers. In all cases, a search pursuant to a probation clause may not exceed the scope of the particular clause relied upon. * * * *Moreover, officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over.* * * * That is, unless the circumstances are such as to otherwise justify a warrantless search of a room or area under the sole control of a nonprobationer (e.g., exigent circumstances), officers wishing to search such a room or area must obtain a search warrant to do so.

(Emphasis added.) *Id.* at 681-682.

{¶ 43} Similarly, in *Johnson*, the Supreme Court of Utah relied on the principles of law set forth in *United States v. Matlock* in holding that "[w]hen a parolee lives with a nonparolee * * * the cotenancy restricts, to some degree, the extent of a permissible consent search. The scope of the consent impliedly given by a cotenant is limited to those parts of the premises where the tenants possess 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *Johnson*, 748 P.2d at 1073, quoting *Matlock*, 415 U.S. at 171. Because law enforcement found evidence of a crime in a common area, a hall closet, the court determined that the search was lawful and did not violate the non-parolee cotenant's right of privacy. *Id.* at 1074.

{¶ 44} While the rationales and holdings expressed in *Woods* and *Johnson* are not

- 17 -

binding on this court, we find them persuasive. These cases further support our conclusion that Andre's probation consent to a warrantless search of his residence did not encompass the basement as he was not known to occupy or have joint control over the area.

{¶ 45} Accordingly, for the reasons set forth above, we find that the trial court erred in denying appellant's motion to suppress on the basis that Andre consented, or appeared to have the authority to consent, to the warrantless search of the basement.

## 2. Exigent Circumstances

{¶ 46} Having determined that Andre's consent to a search of his residence pursuant to the terms of his probation did not justify the warrantless search of the basement, we turn to the state's argument that the search was lawful under the exigent circumstances exception to the warrant requirement. Specifically, the state argues the warrantless entry was justified as the police officers had probable cause to believe criminal activity had occurred in the basement and there was a "real likelihood" that evidence of the criminal activity was in danger of being destroyed.

{¶ 47} One of the recognized exceptions to the Fourth Amendment's warrant requirement is the exigent circumstances exception, where "the exigencies of [a] situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S.Ct. 2408 (1978). The exigent circumstances exception justifies a warrantless entry into a residence in certain situations, including when "immediate entry is necessary to stop the imminent loss, removal, or destruction of evidence or contraband." *State v. Karle*, 144 Ohio App.3d 125, 131 (1st Dist. 2001), citing *Ker v. California*, 374 U.S. 23, 39-40, 83 S.Ct. 1623 (1963). "For the exigent circumstances exception to apply, the state must establish both probable cause and 'some real likelihood that the evidence is in danger of being moved or destroyed in the time that it would take to get a warrant.'" *State v. Christopher*, 12th Dist.

Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 32, quoting *State v. Hatfield*, 4th Dist. Ross No. 98CA2426, 1999 WL 158472, *5 (Mar. 11, 1999).

a. Probable Cause

**{¶ 48}** Probable cause is a "fluid concept" and must be determined under the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 370-371, 124 S.Ct. 795 (2003). "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184 and 08AP-318, 2010-Ohio-5623, ¶ 19, quoting *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302 (1949). To determine whether probable cause exists, a court must examine the "totality of the circumstances" and make a "practical, commonsense decision whether, given all the circumstances there was a fair probability that contraband or evidence of a crime would be found in a particular place." *Christopher* at ¶ 16, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1982). Further, "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Wilson*, 12th Dist. Clinton No. CA2006-03-008, 2007-Ohio-353, ¶ 22.

**{¶ 49}** Here, probable cause for the entry into the basement existed as Velde had received information that there were firearms and marijuana plants in the basement, Velde had been advised by her probationer that a gun safe that may or may not contain firearms was down in the basement, Velde and Workman smelled a strong odor of fresh marijuana upon entering Andre's residence, and Hartsock admitted to law enforcement he had marijuana downstairs in the basement. These facts, when taken together, provided Velde and Workman with probable cause to believe that contraband or evidence of a crime would be found in the basement.

**{¶ 50}** The issue therefore becomes whether there was a "real likelihood" that the evidence in the basement was in danger of being destroyed in the time it would have taken law enforcement to obtain a warrant.

b. Destruction of the Evidence

**{¶ 51}** "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *Enyart*, 2010-Ohio-5623 at ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). "A warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: '(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order.'" *Id.*, quoting *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir.2000). Other factors a court may consider in determining whether exigent circumstances existed include the degree of urgency, the time it would take to get a warrant, and the ready destructibility of the evidence. *State v. Serna*, 12th Dist. Butler No. CA92-12-245, 1993 WL 329972, *1 (Aug. 30, 1993).

**{¶ 52}** Because marijuana and other narcotics are "easily and quickly hidden or destroyed," the Ohio Supreme Court has recognized that there are times where a "warrantless search may be justified to preserve evidence." *State v. Moore*, 90 Ohio St.3d 47, 52 (2000). However, "[n]otwithstanding the ease in which narcotics can be destroyed, a warrantless entry into the home of a suspected drug trafficker, effected without an objectively reasonable basis for concluding that the destruction of the evidence is imminent, does not pass constitutional muster." *United States v. Haddix*, 239 F.3d 766, 768 (6th Cir. 2001). The "mere possibility of the loss or destruction of evidence is an insufficient basis for the warrantless entry of a house to prevent the destruction of evidence." *United States v. Ukomadu*, 236 F.3d 333, 337 (6th Cir. 2001), citing *United States v. Radka*, 904 F.2d 357,

363 (6th Cir.1990); *State v. Hamilton*, 9th Dist. Medina No. 2903-M, 1999 WL 598840, *4 (Aug. 11, 1999). Rather, there must be a "real likelihood" that the evidence is in danger of being destroyed. *Christopher*, 2010-Ohio-1816, ¶ 32.

{¶ 53} We find that the totality of the circumstances in this case does not support a finding of exigent circumstances as there was no basis for Velde or Workman to believe, or even suspect, that there was anyone in the basement or that there was a real likelihood that the marijuana in the basement was in danger of being destroyed. At the motion to suppress hearing, both Velde and Workman testified that the whereabouts of appellant were unknown. Although both Velde and Workman testified it was "possible" appellant was in the basement, and therefore could have been destroying evidence, neither Velde nor Workman heard any noise coming from the basement or saw anyone entering or exiting the basement. Velde admitted that she "didn't really think that there was anyone in the basement." Workman testified her sole basis for believing someone was down in the basement stemmed from the absence of the basement's second tenant, appellant, rather than from any noises or observations she made while at the scene.[2]

{¶ 54} We find the facts of the present case are similar to those in *United States v. Lewis*, 231 F.3d 238 (6th Cir.2000). In *Lewis*, law enforcement had received a tip from a

---

2. { a} During cross-examination, Workman testified as follows:

  { b} [DEFENSE COUNSEL]: Did you have any reason to think that there was anyone in the basement at that time?

  { c} [WORKMAN]: Well, we were told that two people were living there and we only had one accounted for.

  { d} [DEFENSE COUNSEL]: Did you hear any noises coming from the basement?

  { e} [WORKMAN]: I did not.

  { f} [DEFENSE COUNSEL]: Other than that statement that you just said that there were two people living there, did you have any reason to believe that anyone was home in that basement?

  { g} [WORKMAN]: No.

confidential informant that Lewis and his brother Julian were storing and selling narcotics out of the home they shared in Cleveland, Ohio. *Id.* at 239. The informant indicated that Julian was going to be picking up additional narcotics "down the street" from his house. *Id.* at 240. The officers followed Julian "down the street" and observed him purchasing cocaine from a third party. *Id.* Julian and the third party were arrested and law enforcement went back to Lewis and Julian's house. *Id.* At this time, law enforcement entered the home without a warrant, later claiming that exigent circumstances justified their warrantless entry and search. *Id.* at 240-241. Inside Lewis' bedroom, the officers found cocaine, drug paraphernalia, and a firearm. *Id.* Lewis, who had been present in the home during the search, was arrested and charged with possession with intent to distribute crack cocaine and the illegal possession of a firearm by a convicted felon. *Id.* Lewis filed a motion to suppress the evidence, which was denied by the district court. *Id.* at 239. On appeal, the Sixth Circuit reversed the trial court's decision denying the motion to suppress. The court specifically found:

> In this case, the police officers had no reason to believe that third parties were inside the house at the time of the transaction. The informant indicated that there would be a drug transaction outside the house. Although this information was corroborated by the officers surveilling the house, the informant gave no indication that anyone would be in the house at the time of the transaction. The officers saw Julian leave the house. They did not see him or anyone else enter the house. They did not see anyone through a window of the house nor did they hear anything that would indicate the presence of anyone in the house. The officers who entered the house were aware that Julian had been arrested, but they had no knowledge of Lewis's whereabouts and no reason to assume that he was inside the house. The uncorroborated information that Lewis and Julian were partners in a drug business operating out of [the home] does not support the reasonable belief that anyone was home at the time of the transaction.
>
> Without a reasonable belief that there were third parties in the house, the belief that any evidence presumed to be inside the house was in danger of imminent destruction is unfounded.

*Id.* at 241.

- 22 -

{¶ 55} Similar to *Lewis*, in the present case neither the police officers nor Velde had reason to assume that appellant, the unaccounted for cotenant, was in the basement. The officers did not see appellant or anyone else enter the house, did not view him through a window inside the house, and did not hear anything that would indicate his presence in the basement. As at least four police officers were present on the scene in addition to Velde and her supervisor, and the means of egress into the basement was limited to a window and the interior basement door, the officers could have easily secured the premises and sought a warrant. The fact that it would have been inconvenient or taken some time to obtain the warrant does not justify the warrantless entry. *See State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, ¶ 52 (2d Dist.), citing *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586 (1979) ("[t]he inconvenience of securing the residence until a warrant could be obtained [does] not justify the action police took"). Furthermore, and similar to *Lewis*, the fact that appellant was actually present in the basement when Velde, Snell, and Workman initially arrived does not change the analysis. As stated, the inquiry is based upon the objective facts known to the authorities at the time a warrantless entry is effected, and information acquired after the entry may not be relied upon to bootstrap an otherwise illegal warrantless search. The only objective information relied upon to justify the warrantless entry into the basement was the lack of information as to appellant's whereabouts. This uncertainty does not satisfy the state's burden of establishing "a reasonable belief that third parties are inside the dwelling." *Lewis*, 231 F.3d at 241.

{¶ 56} We further conclude that Velde and Workman's concern with their own and their fellow officers' safety did not justify the warrantless search of the basement. Although both Workman and Velde expressed concern over the possibility that an individual may have been in the basement with access to guns that were possibly being stored in the gun safe, this concern did not justify a warrantless entry into the basement. It is only when "there is

*positive, specific evidence* supporting a reasonable belief that a building contains an unsecured firearm that could pose a danger to the officers or other members of the public who are present inside that building or on the scene [that] exigent circumstances * * * may justify a warrantless entry." (Emphasis added.) *Sharpe* at ¶ 50. "[T]he mere fact that a firearm may be located within a private home is not, by itself, sufficient to create an exigent or emergency circumstance." *Id.*, citing *United States v. Keys*, 145 Fed.Appx. 528 (6th Cir.2005).

{¶ 57} Here, law enforcement did not know if there was actually a firearm in the basement. Furthermore, law enforcement had no basis to believe, or even suspect that anyone was in the basement. The concern that appellant might have been in the basement and may have had access to a firearm was wholly speculative and presented no emergency requiring a warrantless entry into the area. *See Sharpe* at ¶ 51 (concluding that a warrantless entry to recover a firearm left inside a defendant's home after the defendant had been arrested and removed from the home was not justified where the officers had no basis to believe that anyone else was inside the home).

{¶ 58} Accordingly, we conclude that under the facts of this case, where no emergency necessitating a warrantless entry existed and there was evidence that the premises could have been secured while a warrant was obtained, the warrantless entry into the basement was unreasonable. While there was probable cause to believe that marijuana was in the basement, there was no basis for law enforcement to believe, or even suspect, that anyone was in the basement or that the marijuana was in danger of being destroyed. The state, therefore, failed to meet its burden of demonstrating that exigent circumstances justified the warrantless entry into the basement.

{¶ 59} As the state failed to demonstrate that an exception to the warrant requirement justified the warrantless search of the basement, we find that the trial court erred by denying

appellant's motion to suppress. Appellant's first assignment of error is, therefore, sustained. The judgment of the trial court is hereby reversed and the cause remanded for further proceedings. On remand, all evidence seized pursuant to the warrantless search of the basement shall be suppressed.

### B. Imposition of Mandatory Fine

{¶ 60} Assignment of Error No. 2:

{¶ 61} THE TRIAL COUNSEL [SIC] ERRED IN SENTENCING THE INDIGENT, BRANDYN NORMAN, TO A MANDATORY FINE OF $7,500.

{¶ 62} In his second assignment of error, appellant contends the trial court erred by imposing a $7,500 mandatory fine at sentencing without adequately considering his present and future ability to pay.

{¶ 63} Given our resolution of appellant's first assignment of error, we find his second assignment of error moot. *See* App.R. 12(A)(1)(c).

### III. CONCLUSION

{¶ 64} Appellant's conviction and sentence are reversed, and the matter is remanded for further proceedings consistent with this opinion.

{¶ 65} Judgment reversed and cause remanded.

S. POWELL and M. POWELL, JJ., concur.