**OHIO DEPARTMENT OF LIQUOR CONTROL, Appellee,**

v.

**FOE AERIE 0456 (FOE 456), Appellant.**

[Cite as *Ohio Dept. of Liquor Control v. FOE Aerie 0456* (1994), 99 Ohio App.3d 380.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE07–977.

Decided Dec. 20, 1994.

*Lee Fisher,* Attorney General, and *David A. Raber,* Assistant Attorney General, for appellee.

*Fawley & Associates, Darrell E. Fawley, Jr.,* and *Kurt O. Gearhiser,* for appellant.

TYACK, Judge.

On July 22, 1992, agents of the Ohio Department of Liquor Control (hereinafter "department") entered and searched the premises of the private, members-only FOE Aerie 456 club located in Martins Ferry, Ohio. The holder of the club's liquor permit was ultimately cited for permitting and/or allowing gambling on the premises, in violation of Ohio Adm.Code 4301:1-1-53.

The agents seized various items, including cash, seven electronic video gambling machines, tip tickets, a gas grill, clock radio, two televisions, raffle tickets, and a punch board. On November 6, 1992, pursuant to R.C. 2933.43, the department filed a petition for forfeiture of the items seized, claiming the property to be "contraband" within the meaning of R.C. 2901.01(M).

The Ohio Liquor Control Commission heard the case in February 1993 and, in July 1993, found that the permit holder had violated the regulations prohibiting gambling on permit premises.

On May 3, 1993, the department filed an amended petition for forfeiture, seeking forfeiture of an additional $2,198.25 contained in the video gambling machines.

On August 12, 1993, defense counsel filed a motion to dismiss the petition for forfeiture, arguing that the Franklin County Court of Common Pleas lacked jurisdiction to hear the case and that it should have been filed in Belmont County, where the club is located. Defense counsel also filed a motion to suppress as evidence all items discovered as a result of the allegedly unlawful search and seizure.

Following a hearing on September 1, 1993, a referee filed a report on March 21, 1994, in which she recommended that the court overrule the motion seeking

dismissal based upon jurisdictional grounds. However, she recommended that the motion to suppress be granted and that the petition be dismissed. Counsel for the department filed objections to the latter recommendation of the referee.

In a decision dated May 18, 1994, the trial court sustained the department's objections, overruled both motions, and granted the petition for forfeiture. The trial court's judgment was journalized in an entry filed June 2, 1994.

FOE 456 (hereinafter "appellant") has timely appealed, assigning four errors for our consideration:

"I. The Franklin County Common Pleas Court erred when it granted the Department of Liquor Control's petition for forfeiture pursuant to the warrantless administrative search exception in [*Stone v. Stow*] (1992), 64 Ohio St.3d 156[,] because the Department of Liquor Control did not have the power to conduct a warrantless search on July 22, 1922.

"II. The Franklin County Common Pleas Court erred when it failed to dismiss the petition for forfeiture because it was filed in Franklin County instead of Belmont County.

"III. The Franklin County Common Pleas Court erred when it granted the forfeiture and allowed the amendment of the petition outside of the time limit established by the Ohio Supreme Court in *State v. Baumholtz* (1990), 50 Ohio St.3d 198[,] and after the administrative trial in violation of *State v. Casalicchio* (1991), 58 Ohio St.3d 178.

"IV. The Franklin County Common Pleas Court erred when it granted the forfeiture because there was no showing that the property was contraband and therefore forfeitable pursuant to ORC 2901.01(M) and ORC 2933.43(C)."

We have no record before us of the hearing conducted before the Ohio Liquor Control Commission. However, the parties' briefs indicate that appellant, while denying the alleged violations, stipulated to the facts as set forth in the investigators' report. That report, which is part of the record before us, reveals the following facts surrounding the search of appellant's premises.

Investigating a "central office complaint," five agents of the department went to the club at approximately 9:00 p.m. on July 22, 1992. Investigator Akins followed a club member through the main entrance after that member gained access by using a key card. The four other investigators remained outside.

Inside the club, Investigator Akins approached a bartender and asked for aspirin. The investigator observed someone placing money into an electronic video gambling machine marked "Draw 80 Poker." The investigator also observed four other similar gambling machines. Investigator Akins put money into one of the machines and played the credits that registered.

The investigator observed in the back bar area a glass bowl containing tip tickets. While speaking with the bartender, Investigator Akins saw several poster board signs that displayed cash payoff amounts for winning tip tickets. Then, Investigator Akins went to the front door to let the other agents inside the club. Additional search and seizure ensued. In addition to the video machines, cash,[1] and tip tickets, investigators also discovered evidence of raffle drawings and punchboards. The televisions, gas grill, and clock radio were reportedly intended to be awarded as prizes for the raffles.

■ Because it purportedly raises "jurisdictional" defects, we address the second assignment of error first. Appellant contends that the trial court erred in failing to grant its motion to dismiss based upon the department's filing the petition in the wrong county. Appellant frames the issue in terms of "jurisdiction" and argues that the petition should have been filed in Belmont County, the county in which the club is located, based upon R.C. 2933.43(C), which reads:

" * * * The petition shall be filed in the court that has jurisdiction over the underlying criminal case or administrative proceeding involved in the forfeiture. * * * "

Additionally, appellant argues that the court having "jurisdiction" was the court in the county where appellant "could" file a notice of appeal from the administrative proceeding. Appellant relies upon R.C. 119.12, which provides:

"Any party adversely affected by any order of an agency issued pursuant to an adjudication * * * revoking or suspending a license * * * *may* appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident, provided that appeals from decisions of the liquor control commission *may* be to the court of common pleas of Franklin county * * * *." (Emphasis added.)

The issue raised is actually one of venue, not jurisdiction, and the above language relied upon by appellant is discretionary, not mandatory. In *Ohio Dept. of Liquor Control v. BPOE Lodge 0107* (June 4, 1991), Franklin App. No. 90AP–821, unreported, 1991 WL 101597, this court held that venue in the Franklin County Court of Common Pleas was appropriate in a forfeiture case arising from an out-of-county seizure.

---

1. The evidence inventory sheet in the investigators' report, as well as all other documents and pleadings contained in the record, indicates that $391.75 was seized. However, in an interoffice memo regarding an "evidence shortage" in this case, a discrepancy was noted in that only $334.50 was actually delivered to the evidence custodian. Supervisors ultimately attributed the discrepancy to erroneous addition on the part of two investigators who handled the cash.

The second assignment of error is overruled.

■ In its first assignment of error, appellant challenges the trial court's denial of the motion to suppress as evidence items obtained as a result of the department's allegedly unlawful search and seizure. Appellant argues, and the referee agreed, that the warrantless search and seizure conducted by the department violated the prohibitions against unreasonable searches and seizures guaranteed by the Ohio and United States Constitutions. Specifically, the referee found that the warrantless search of appellant's premises did not fall into any of the recognized exceptions to the search warrant requirement.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 14, Article I of the Ohio Constitution contains a similar provision.

In *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 43, 482 N.E.2d 606, 608, the Supreme Court of Ohio listed the "judicially recognized exceptions" to the search warrant requirement: a search incident to a lawful arrest; consent signifying waiver of constitutional rights; the stop-and-frisk doctrine; hot pursuit; probable cause to search and the presence of exigent circumstances; and the plain view doctrine. In *Stone v. Stow* (1992), 64 Ohio St.3d 156, 165, 593 N.E.2d 294, 300–301, the Supreme Court of Ohio expressly added the "administrative search" exception to this list.

The department argues, and the trial court summarily held, that the finding of the referee was in conflict with the holding in *Stone*, the syllabus of which reads:

"The 'administrative search' exception to the warrant requirement applies to inspections of pharmacy prescription records by law enforcement officers when the scope of such a search is sufficiently limited."

In *Stone*, the court stated that a warrantless administrative search may be conducted "if the statute authorizing the search does not interfere with a reasonable expectation of privacy protected by the Fourth Amendment." *Id.* at 164, 593 N.E.2d at 300. In the context of the *civil* case before it, the court concluded that pharmacists, being in such a pervasively regulated business, have a "reduced" expectation of privacy in the prescription records they keep. Further, in the circumstances of the civil action before it, the court stated that physicians and patients have no reasonable expectation of privacy in such records.

We do not find *Stone* dispositive of the Fourth Amendment issue before us. The *Stone* court was careful to distinguish the situation presented from that which it addressed earlier in the context of criminal cases. The situation presented in *Stone* was "not a situation in which the police officers [were] attempting to use warrantless administrative searches to uncover evidence of general criminality." *Stone,* 64 Ohio St.3d at 165, 593 N.E.2d at 301. The court cited *State v. Akron Airport Post No. 8975, supra,* and *State v. VFW Post 3562* (1988), 37 Ohio St.3d 310, 525 N.E.2d 773, and noted that "general criminality" *was* at issue in cases where officers conducted "liquor inspections," or warrantless "administrative" searches, to look for gambling devices. Similarly, this court has distinguished reasonable administrative searches from those where liquor control agents gained access to permit premises by "trickery, deceit, or misrepresentation." *BPOE Lodge 0170 Gallipolis v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 811, 596 N.E.2d 529 (warrantless search and seizure was lawful under plain view and consent exceptions).

In *VFW Post 3562, supra,* the Supreme Court of Ohio held, at paragraph two of the syllabus:

"Evidence obtained as a result of a warrantless administrative search may not be used in a criminal prosecution under a statute of general criminality not related to provisions of R.C. Chapters 4301 and 4303."

In a case factually similar to that before us, this court previously addressed the impact of *Stone* on *VFW Post 3562.* In *N. Toledo Arrow Club v. Ohio Liquor Control Comm.* (June 1, 1993), Franklin App. No. 93AP–288, unreported, 1993 WL 194111, a case upon which the department heavily relies here, this court upheld a warrantless search, explaining as follows:

"*VFW Post 3562* dealt with a warrantless search used to support a criminal conviction, not an administrative violation. The [*Stone* ] court maintained the validity of warrantless administrative searches in proper situations. * * * The search in this case was proper because it resulted in an administrative violation, not a criminal conviction. This distinction is critical when reviewing administrative investigations for liquor violations."

We too find a critical distinction between the forfeiture situation here and the "non-criminal" situations presented in the above cases. We premise our analysis on the enduring maxim that forfeitures are not favored in law or equity. *State v. Lilliock* (1982), 70 Ohio St.2d 23, 25, 24 O.O.3d 64, 65, 434 N.E.2d 723, 724–725, citing *State ex rel. Lukens v. Indus. Comm.* (1944), 143 Ohio St. 609, 611, 28 O.O. 506, 506–507, 56 N.E.2d 216, 217.

Recent Ohio and United States Supreme Court case law regarding forfeiture indicates that forfeiture proceedings are punitive and more "criminal" than "civil"

in nature and substance. See, *e.g., State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916 (where property is ruled contraband pursuant to R.C. 2933.42[B], forfeiture of that property pursuant to R.C. 2933.43 constitutes a separate criminal penalty in addition to the penalty for conviction of the underlying offense); *State v. Hill* (1994), 70 Ohio St.3d 25, 32, 635 N.E.2d 1248, 1254, citing *Austin v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488, and *Alexander v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (Excessive Fines Clauses of Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution apply to so-called "civil" *in rem* forfeiture proceedings). See, also, *United States v. Parcel of Land, Buildings, Appurtenances & Improvements* (1993), 507 U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 ("innocent owner" defense is available in "civil" *in rem* forfeiture proceedings).

 Clearly the exclusionary rule now ·applies to forfeiture proceedings. In *State v. Bailey* (1989), 64 Ohio App.3d 379, 382, 581 N.E.2d 1104, 1106–1107, the court, citing *One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U.S. 693, 702, 85 S.Ct. 1246, 1251–1252, 14 L.Ed.2d 170, 175–176, stated as follows:

" '[T]he [quasi-criminal] nature of a forfeiture proceeding * * * and the reasons which led the Court to hold that the exclusionary rule * * * is obligatory upon the States * * * support the conclusion that the exclusionary rule is applicable to forfeiture proceedings such as the one involved here.'

"Specifically:

" '[A]n object illegally seized *cannot in any way* be used either as evidence or as the basis for jurisdiction. Therefore, evidence derived from a search in violation of the fourth amendment must be *excluded* at a forfeiture proceeding.' (Emphasis added.) *United States v. One 1978 Mercedes Benz, Four–Door Sedan* (C.A.5, 1983), 711 F.2d 1297, 1303."

*One 1958 Plymouth Sedan, supra,* was cited with approval by the United States Supreme Court in its recent *Austin v. United States, supra.*

 The department construes appellant's argument as requiring this court to hold that a permit holder's premises are "an untouchable fortress that would prevent *any* administrative entry or interference in their gambling activities." (Brief of Appellee at 3; emphasis added.) We disagree with such a sweeping, imprecise representation of what the law permits and requires. It is not "any" interference which is forbidden; it is unlawful, unreasonable interference employed to maintain a forfeiture which is forbidden. As acknowledged by the investigators in their report filed in this matter, appellant's club was being investigated as a result of a "central office complaint." We see no reason for the

failure to proceed through formal channels to obtain a search warrant when forfeiture proceedings are reasonably foreseeable.

The trial court erred in failing to grant appellant's motion to suppress and, therefore, the first assignment of error is sustained.

Our disposition of the first assignment of error renders the third and fourth assignments of error moot. See App.R. 12.

Having sustained the first assignment of error, the judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.