OHIO DEPARTMENT OF LIQUOR CONTROL, Appellant,

v.

FRATERNAL ORDER OF EAGLES AERIE 2293, Appellee.

[Cite as *Ohio Dept. of Liquor Control v. Fraternal Order of Eagles Aerie 2293* (1996), 112 Ohio App.3d 94.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE02–165.

Decided June 27, 1996.

*Betty D. Montgomery,* Attorney General, and *David A. Raber,* Assistant Attorney General, for appellant.

*Fawley & Associates, Darrell E. Fawley, Jr.* and *Kurt O. Gearhiser,* for appellee.

---

PEGGY BRYANT, Judge.

Plaintiff-appellant, Ohio Department of Liquor Control, now Ohio Department of Public Safety, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Fraternal Order of Eagles Aerie 2293. Plaintiff assigns a single error:

"The lower court erred to the prejudice of plaintiff/appellant in denying the petition of forfeiture in ruling that the liquor agent entered the licensed permit premises without the consent of a club trustee."

On May 25, 1994, Ohio Department of Public Safety agent James Nerswick went to defendant's premises to investigate illegal gambling and liquor permit violations. Generally, entrance to defendant's premises involved going through one unlocked door to a locked door with a buzzer. Because Nerswick was not a club member, before attempting to enter he ran a check on a license tag from a car in the parking area and identified its owner. After obtaining the car owner's name, Nerswick entered the unlocked door, pushed the buzzer, and asked for the car owner by name. The doorkeeper responded that the person was at the bar and permitted Nerswick to enter. Once inside, Nerswick went to the person and spoke briefly to him; at that time he observed in plain view seven illegal operable electronic gambling devices and tip tickets, visible only from inside the premises. Because gambling at defendant's premises violated its liquor permit conditions,

plaintiff's agents seized the gambling devices, tip tickets,[1] $543 in cash, two stamp machines, two pocket watches, and two pocket knives.

On July 6, 1994, plaintiff filed an R.C. 2933.43 petition for forfeiture of the seized items. Defendant responded with two motions: a motion to dismiss for lack of jurisdiction and a motion challenging the constitutionality of Nerswick's search and seizure. Although the trial court initially denied both motions, it granted defendant's motion for rehearing. On rehearing, the magistrate decided that both motions should be denied. Sustaining defendant's objections to the magistrate's decision, the trial court suppressed all seized evidence plaintiff used to support its petition, dismissed plaintiff's forfeiture petition, entered judgment for defendant, and directed that all property seized be returned to defendant. Plaintiff appeals, asserting that the trial court improperly suppressed the evidence seized at defendant's premises.

The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, protect against unreasonable searches and seizures. Where persons hold a subjective expectation of privacy, a valid warrantless search must fall within a judicially recognized exception to the warrant requirement. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; see *State v. Penn* (1991), 61 Ohio St.3d 720, 576 N.E.2d 790 (listing exceptions to the search warrant requirement); *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 43, 482 N.E.2d 606, 608.[2] Although an additional exception pertinent to administrative proceedings allows warrantless administrative searches conducted pursuant to statute or regulation, *Penn, supra*, 61 Ohio St.3d at 726, 576 N.E.2d at 794, such regulations do not excuse warrantless searches in R.C. 2933.43 forfeiture proceedings. *Ohio Dept. of Liquor Control v. FOE Aerie 0456* (1994), 99 Ohio App.3d 380, 650 N.E.2d 940; see, also, *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, 300, fn. 4 (adding administrative searches as an exception to the warrant requirement); *Ohio Dept. of Liquor Control v. Fraternal Order of Orioles Nest 274* (Dec. 21, 1995), Franklin App. No. 95APE08–973, unreported, 1995 WL 771428; *N. Toledo*

---

1. Tip tickets are "gambling devices which when opened may reveal a symbol indicating that the purchaser has won money." *Columbus v. I.O.R.M., Sioux Tribe–Redman Club* (1993), 88 Ohio App.3d 215, 216, 623 N.E.2d 679, 680.

2. The consent and plain-view exceptions to the warrant requirement are the only exceptions pertinent to these facts. In *Penn*, the Supreme Court recognized the warrant requirement exceptions as "(a) * * * search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain view doctrine." *Id.*, 61 Ohio St.3d at 723–724, 576 N.E.2d at 793.

*Arrow Club v. Ohio Liquor Control Comm.* (June 1, 1993), Franklin App. No. 93AP–288, unreported, 1993 WL 194111.

As a result, the warrantless search plaintiff conducted here is reasonable, and thus permissible, only if it satisfies one of the only two exceptions potentially applicable, the consent and plain-view exceptions.[3] In an effort to come within one of those exceptions, plaintiff asserts that after the doorkeeper consented to Nerswick's entering the premises, the gambling devices came within Nerswick's plain view.

Pursuant to the plain-view exception, state actors may seize items in plain view, discovered and recognized during the course of lawful activity. *BPOE Lodge 0170 Gallipolis v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 811, 814, 596 N.E.2d 529, 531, citing *Harris v. United States* (1968), 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. To fall within the plain-view exception, the item seized must (1) be in the plain view of authorities lawfully on the premises, (2) readily exhibit its criminal nature, and (3) be located in a place to which authorities lawfully have access. *BPOE, supra,* 72 Ohio App.3d at 814, 596 N.E.2d at 531, citing *State v. Ragan* (Aug. 1, 1990), Hamilton App. No. C–890137, unreported, 1990 WL 107455. To establish that Nerswick viewed the gambling paraphernalia from a place to which he lawfully had access, plaintiff contends that the doorkeeper consented to Nerswick's entry.

To satisfy the consent exception, the state must demonstrate that the doorkeeper freely and voluntarily consented to the entry. See *State v. Posey* (1988), 40 Ohio St.3d 420, 534 N.E.2d 61, paragraph three of the syllabus. Such free and voluntary consent does not require an agent or officer identify himself or herself. *Id.* at paragraph three of the syllabus. Even if the consent would not have been given upon identification, agents or officers may be admitted as a club member's guest, *id.* at 421, 534 N.E.2d at 62, they may enter as a member of the general public, *id.,* at 428, 534 N.E.2d at 67, *State v. Taub* (1988), 47 Ohio App.3d 5, 6, 547 N.E.2d 360, 361, or they may enter as an actual club member. *Loyal Order of Moose Lodge No. 1473 v. Ohio Liquor Control Comm.* (1994), 95 Ohio App.3d 109, 111, 641 N.E.2d 1182, 1183; *Columbus v. I.O.R.M. Sioux Tribe–Redman Club* (1993), 88 Ohio App.3d 215, 623 N.E.2d 679 (used club member's key to obtain entry).

However, if the agent or officer affirmatively misrepresents his or her identity or lies about his or her intentions, the doorkeeper's consent is considered coerced, involuntary and invalid. *Id.* at 219, 623 N.E.2d at 682; see, *e.g., State v. Hickson*

---

3. When Nerswick tried to obtain entry to defendant's premises, he had no search warrant and did not seek one. Plaintiff admits that based only upon a tip, Nerswick did not have probable cause to search defendant's premises.

(1990), 69 Ohio App.3d 278, 280, 590 N.E.2d 779, 780 (consent not valid because officers misrepresented why they wanted to look out defendant's window). Cf. *Posey, supra,* 40 Ohio St.3d at 428, 534 N.E.2d at 67; *Taub, supra,* 47 Ohio App.3d at 11, 547 N.E.2d at 366. In *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129, liquor control agents went to a fraternity house, falsely identified themselves as alumni, and deliberately misrepresented their purpose for entering. When the state presented the subsequently discovered liquor law violations, the Supreme Court emphasized that the fraternity house was not a commercial center for criminal activity and that the agents were not permitted entry to conduct illegal business. Under such circumstances, when the agents affirmatively misrepresented their identity and disguised their true purpose, their deception rendered the consent coerced and involuntary. *Id.* at 143–144, 23 OBR at 296–297, 491 N.E.2d at 1131–1132; see, also, *Akron Airport Post, supra* (in order to gain entry, officers passed club members opening door with key cards); *FOE 0456, supra.*

■ The distinction between *Posey* and *Pi Kappa Alpha* concerns the purpose for which an agent or officer is permitted entry. When consent to enter in effect invites an agent or officer to observe and engage in illegal activity, the consent remains voluntary. *Posey, supra,* 40 Ohio St.3d at 429, 534 N.E.2d at 68. On the other hand, if the consent given has no relationship to the illegal activity conducted on the premises, consent to enter is considered involuntary and invalid. *Id.* at 429, 534 N.E.2d at 68; see, also, *Pi Kappa Alpha, supra,* 23 Ohio St.3d at 144, 23 OBR at 297, 491 N.E.2d at 1132.

■ Here, based upon Nerswick's affirmative misrepresentation as to his purpose, the doorkeeper allowed him to enter for a purely legal transaction, talking to a person inside. The doorkeeper did not permit entry for observing and engaging in illegal gambling activity, and Nerswick did not pose as a participant in the illegal activities investigated. See *Posey, supra,* 40 Ohio St.3d at 429, 534 N.E.2d at 68. His affirmative statements and disguise of his true purpose rendered the doorkeeper's consent coerced and involuntary. Accordingly, the *Pi Kappa Alpha* analysis is dispositive, and the doorkeeper's consent was ineffective.

■ Without valid consent from the doorkeeper, plaintiff cannot satisfy the consent exception and cannot demonstrate for purposes of the plain-view exception that Nerswick was in a legal and authorized position when he observed the gambling paraphernalia. Accordingly, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN and LAZARUS, JJ., concur.