[Cite as *State v. Pettiford*, 2018-Ohio-1015.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2017-05-010 |
| | : | O P I N I O N |
| - vs - | | 3/19/2018 |
| | : | |
| KIMBALL LEE PETTIFORD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20160218

Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, 1st Floor, Washington C.H., Ohio 43160, for plaintiff-appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington C.H., Ohio 43160, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Kimball Pettiford, appeals his convictions in the Fayette County Court of Common Pleas for possession of heroin, possession of drug abuse instruments, and illegal possession of drug abuse paraphernalia.

{¶ 2}  The Washington Courthouse Police Department received a report of a possible drug overdose and responded to Pettiford's home.  Upon arrival, Pettiford was located lying

on his back and unresponsive on his front porch. While waiting for the medical responders to arrive, the responding officer observed through a closed screen door a dog leash looped through itself to form a tourniquet, as well as hypodermic syringes sitting on the table within six to seven feet inside Pettiford's home. Police announced their presence, but no one answered inside the home.

{¶ 3} Pettiford regained consciousness and claimed that he had been consuming alcohol and that he had not been inside the house the entire day. Police placed Pettiford in a police cruiser after he refused medical assistance. Police then seized the dog leash, hypodermic syringes, a cup, a spoon, and a cotton ball. Officers also seized a white piece of paper containing a powder substance and a small rock near the paper. Officers performed a field test of the seized substances, and the test was positive for heroin.

{¶ 4} Pettiford was arrested and later indicted for possession of heroin, drug instruments, and drug abuse paraphernalia. Pettiford pled not guilty, and filed a motion to suppress the items seized from his home. After a hearing on the matter, the trial court overruled the motion to suppress. Pettiford's defense counsel later moved to withdraw from representation, claiming a breakdown in communication after Pettiford blamed counsel for the trial court's denial of the motion to suppress. The trial court granted defense counsel's motion to withdraw, and appointed Pettiford new counsel.

{¶ 5} Pettiford ultimately pled no contest to the charges, and the trial court found him guilty on each. The state and Pettiford submitted an agreed sentence, which was accepted by the trial court, of six months on count one, 90 days on count two, and 30 days on count three, with all sentences to be served concurrently. Pettiford now appeals his convictions, raising the following assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN APPLYING THE PLAIN VIEW EXCEPTION TO

- 2 -

THE WARRANT REQUIREMENT IN DENYING PETTIFORD'S MOTION TO SUPPRESS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 8} Pettiford argues in his first assignment of error that the trial court erred in denying his motion to suppress.

{¶ 9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.* Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting these facts as true, the appellate court must then independently determine, as a matter of law, and without deference to the trial court's conclusions, whether the trial court applied the proper legal standard. *Id.*

{¶ 10} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures." Warrantless searches are per se unreasonable unless one of the well-delineated exceptions applies. *State v. Kelley*, 12th Dist. Butler No. CA2009-03-092, 2009-Ohio-5924.

{¶ 11} If an individual does not act to preserve the privacy afforded by the Fourth Amendment, "such as by leaving an object in the plain view of the public, then the state has not 'searched' within the meaning of the Constitution, because the individual has exposed those objects to others rather than keeping them to himself." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, ¶ 15.

{¶ 12} Although society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection. *Id.* at ¶ 15. Instead, the "police are free to observe whatever may be

seen from a place where they are entitled to be." *Id.* "Simply put, the Fourth Amendment does not itself 'draw the blinds the occupant could have drawn but did not.'" *Id.*, quoting *State v. Smith*, 37 N.J. 481, 496 (N.J.1962).

{¶ 13} These Fourth Amendment principles are inherent in the plain view doctrine. *Buzzard*, 2007-Ohio-373. The doctrine represents the requirement that an individual must protect his or her privacy, and should an officer observe items in plain view when lawfully on the property, no warrant is required. *Id.* Thus, it is well-established that pursuant to the plain view doctrine, a police officer lawfully on a person's property may seize evidence in plain view without a warrant. *State v. Young*, 12th Dist. Warren No. CA2014-05-074, 2015-Ohio-1347.

{¶ 14} The plain view doctrine authorizes the warrantless seizure of evidence if the initial intrusion leading to the discovery of the evidence was lawful and the incriminating or illegal nature of the items was immediately apparent. *State v. Simmons*, 12th Dist. Butler No. CA2012-11-229, 2013-Ohio-5088, ¶ 18. The "immediately apparent" requirement is satisfied when police have probable cause to associate an object with criminal activity. *Young*, 2015-Ohio-1347. The requisite probable cause may arise from the character of the property itself or the circumstances in which it is discovered, and police officers may rely on their specialized knowledge, training, and experience in establishing probable cause to identify items as contraband. *Id.*

{¶ 15} Another exception to the warrant requirement occurs when officers encounter exigent circumstances. The Ohio Supreme Court applies exigent circumstances as an exception to the warrant requirement for instances of both search and seizure. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10. "The exigencies of [a] situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *State v. Fletcher*, 12th Dist. Brown No. CA2016-08-016, 2017-Ohio-1006, ¶ 33. This exception justifies a warrantless entry into a residence in certain

situations, including when entry is necessary to protect the safety and well-being of police officers or others. *Id.* The Fourth Amendment considers a warrantless entry reasonable as long as the circumstances, when viewed objectively, justify the entry. *Brigham City vs. Stuart*, 547 U.S. 398, 112 S.Ct. 1943 (2006).

{¶ 16} "The exigent circumstances doctrine requires probable cause plus exigent circumstances to effectuate a warrantless entry of [a] home." *State v. Wilson*, 12th Dist. Clinton No. CA2006-03-008, 2007-Ohio-353, ¶ 22. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 73. In determining whether probable cause exists, a court must look at the "totality of the circumstances." *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 16. Probable cause is viewed under an objective standard. *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 14.

{¶ 17} During the hearing on Pettiford's motion to suppress, the state presented evidence that officers seized the items from Pettiford's house with constitutional authority. First, and regarding plain view, the record is clear that officers were legally on the premises because they were responding to an emergency call that someone had overdosed at Pettiford's residence. Upon arrival, officers located Pettiford on the front porch of his home and were legally on the premises as first responders to offer emergency assistance.

{¶ 18} The responding officer testified at the hearing that when he arrived at Pettiford's residence, he observed the unresponsive Pettiford lying on the porch. The officer then approached to check Pettiford's vital signs, entering the porch area necessarily. Once there, the officer could see into the living room through the open front door and closed screen door. The officer testified that the items of contraband were approximately six to seven feet away from him when he initially made his observation. The officer clearly observed a dog

leash fashioned into a tourniquet and well as hypodermic syringes. The officer seized the items he observed in plain view, and only those items.

{¶ 19} In addition to being on the premises legally, we also find that the incriminating or illegal nature of the items was immediately apparent and that officers had probable cause to associate the objects with criminal activity. The officer testified that the dog leash was looped through itself to be used as a tourniquet and that he also observed syringes on the table. Tourniquets and syringes are drug paraphernalia commonly used to assist in the injection of heroin, and the nature of the items was immediately apparent to associate them with drug use. Thus, the requirements for application of the plain view doctrine are clearly present.[1]

{¶ 20} Moreover, we find that there was probable cause to establish the existence of exigent circumstances during the time that officers provided emergency assistance to Pettiford and during the time officers entered the home. The responding officer testified that he and other officers did not know if anyone else was in the home as they provided aid to Pettiford. The officer further testified that part of his decision to enter the home while waiting for the life squad to arrive was specific to not knowing if anyone else was in the home.

{¶ 21} This evidence supports the warrantless entry into Pettiford's home and seizure of the contraband in plain view. The officers were unaware if anyone else was in the home at the time they arrived and began offering emergency assistance to Pettiford. It was reasonable for officers to objectively question their safety or the safety of others given that Pettiford had exited his house after a drug overdose, was unresponsive, and could not inform officers if anyone else was inside the home.

---

1. The dissent's reasoning would require a warrant despite the observation of illegal contraband, and would prohibit the seizure of that contraband, thereby destroying the very purpose and logic behind the plain view exception to the warrant requirement. This exception is firmly rooted in constitutional jurisprudence. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, (1963).

- 6 -

{¶ 22}   It was also reasonable for officers to objectively question whether anyone else in the home also overdosed and required medical assistance.  The record clearly indicates the presence of multiple syringes and the existence of additional drugs on the table in the home.  The police would have been remiss to not check the home for others potentially in need of medical attention.  While police announced their presence and received no response, a person suffering from an overdose would not be able to answer or to indicate the need for attention.  It was up to the police to ascertain whether anyone in the home needed assistance based on the circumstances objectively present at the time.  Moreover, it was necessary for officers to investigate whether there were children inside who needed assistance.  Any of these reasons support the officers' entrance into the home to determine the circumstances therein as they related to their safety or the safety of others.

{¶ 23}   We also recognize the possibility that someone inside the home, even if not a threat to officers or otherwise in need of medical care, could have interfered with the officers' ability to seize the contraband had officers stopped to secure a warrant.  The testifying officer clearly observed multiple syringes, thus indicating the possibility that someone else was in the home and had reason to remove the suspected drugs and drug paraphernalia because they were incriminating evidence.  While Pettiford relies on the fact that the responding officer announced his presence twice and received no answer from the house, it is entirely reasonable for an officer to believe that another drug user in the house would not willingly acknowledge his or her presence at an obvious crime scene.

{¶ 24}   The dissent would have the police walk away from an unsecured residence with drugs and syringes inside or, in the alternative, have new officers called to the scene and enter the residence for the undaunting task of guarding the immediately-apparent contraband in order that the responding officers can leave to obtain a search warrant for purposes of entering and seizing the contraband being guarded.  Such a suggestion is

unworkable and inconsistent with the very rationale which carved out the plain view and exigent circumstance exceptions to the requirement of a warrant.[2]

{¶ 25} The finding of probable cause for exigent circumstances is based on the totality of the circumstances, and is an objective determination.[3] The circumstances were such that officers arrived after an emergency call, found Pettiford unresponsive, tried to provide medical assistance, and did not know if anyone else was inside the home as a threat, someone in need of medical assistance, or someone who could destroy evidence. As such, there was probable cause to support the officers' entrance into Pettiford's home based upon exigent circumstances.

{¶ 26} After reviewing the record, we find that the warrantless search was nonetheless reasonable based on the plain view doctrine and exigent circumstances. As such, Pettiford's first assignment of error is overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF PETTIFORD'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 29} Pettiford argues in his second assignment of error that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a

---

2. The need to protect persons and property inside a residence, as well as preventing the destruction of evidence, can justify exigent circumstances as reasonable for entering a residence without a warrant. *State v. A Bay Luong*, 12th Dist. Butler No. CA2011-06-101, 2012-Ohio-4519.

3. As discussed in the dissent, the state did not argue exigent circumstances at length in its brief. However, the absence of such argument does not amount to the absence of exigent circumstances. The trial court addressed exigent circumstances, the responding officer testified about exigent circumstances, and exigent circumstances are objectively present based on what occurred on the night in question.

result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694.

{¶ 30} The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 31} After reviewing the record, we find that Pettiford received effective assistance of counsel. The record is clear that defense counsel argued the motion to suppress and presented cogent arguments as to why the motion should be granted. While the trial court overruled the motion, its decision does not render defense counsel's assistance in the matter deficient. There is no indication in the record that the results of the motion to suppress would have been different had defense counsel taken a different approach or presented other evidence. This is especially true where the items seized were clearly in plain view and exigent circumstances existed to permit officers to perform the warrantless seizure of the drugs and related paraphernalia.

{¶ 32} Having found that Pettiford received effective assistance of counsel, we overrule his second assignment of error.

{¶ 33} Judgment affirmed.

RINGLAND, P.J., concurs.

- 9 -

M. POWELL, J., dissents.

**M. POWELL, J., dissenting.**

{¶ 34} I dissent from the majority's affirmance of the trial court's denial of Pettiford's motion to suppress.

{¶ 35} The trial court denied Pettiford's motion to suppress the warrantless seizure of the heroin, drug abuse instruments, and drug paraphernalia (the "contraband") based upon the plain view doctrine and the exigent circumstances exception to the Fourth Amendment's warrant requirement. However, the record does not establish that the plain view doctrine or exigent circumstances authorized the warrantless entry into Pettiford's home to seize the contraband. Thus, the motion to suppress should have been granted.

{¶ 36} This case involves a warrantless entry into a person's home and a warrantless seizure of contraband. "Where there is no search warrant, the burden falls on the state to show that a search comes within one of the judicially recognized exceptions." *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985). *See also Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988); *State v. Taylor*, 77 Ohio App.3d 223, 225 (12th Dist.1991). Thus, Pettiford is not required to establish that the seizure of the contraband was illegal. Rather, it is incumbent upon the state to show that either the plain view doctrine or the exigent circumstances exception to the warrant requirement authorized the warrantless seizure of the contraband under the Fourth Amendment.

{¶ 37} The United States Supreme Court has described the plain view doctrine as follows:

> It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain

view, its incriminating character must also be "immediately apparent." * * * Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

(Citations omitted.) *Horton v. California*, 496 U.S. 128, 136-137, 110 S. Ct. 2301 (1990). *See also State v. Spence*, 12th Dist. Butler No. CA2002-05-107, 2003-Ohio-4237, ¶ 24; *Ohio Dept. of Liquor Control v. Fraternal Order of Eagles Aerie 2293*, 112 Ohio App.3d 94, 98 (10th Dist.1996); and *State v. Wangul*, 8th Dist. Cuyahoga No. 79393, 2002 Ohio App. LEXIS 564, *10-11 (Feb. 14, 2002).

{¶ 38} Because the requirements of the plain view doctrine that an officer be "lawfully located in a place from which the object can be plainly seen" and that the officer "have a lawful right of access to the object itself" oftentimes coincide, it is easy to confuse these two elements as one and the same. However, as the facts of this case illustrate, there are occasions where these elements do not coincide, thus requiring that they be independently satisfied. Accordingly, a police officer must not only be constitutionally located in a place from which the item to be seized is plainly visible, but he must also be able to access the item consistent with the Fourth Amendment. It is upon the legal right of access element of the plain view doctrine that the seizure of the contraband in this case fails to satisfy constitutional muster.

{¶ 39} The police had a lawful right to be on Pettiford's porch as an incident of their response to the report of Pettiford's apparent overdose. It was from this lawful vantage point that the police observed, in open view, the contraband in Pettiford's home that was eventually seized. This observation did not violate the Fourth Amendment. In fact, this observation, in conjunction with Pettiford's condition when the police arrived on the scene, established probable cause to enter Pettiford's home and seize the contraband.

Nonetheless,

- 11 -

the limits on the [plain view] doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle * * * that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

(Emphasis sic.) *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S. Ct. 2022 (1971).

**{¶ 40}** In commenting upon these implicit limitations of the plain view doctrine, the Fourth Appellate District has observed that "while the observation of something that is in 'open view' does not amount to a search, this discovery does not justify a subsequent warrantless seizure absent some specific exception to the warrant requirement." *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 36. Hence, the officer's mere observation of the contraband lying on Pettiford's coffee table, through the screen door on Pettiford's porch, did not justify the warrantless entry into Pettiford's home to access and seize that contraband.

**{¶ 41}** The state relies upon the plain view doctrine and our opinion in *State v. Young*, 12th Dist. Warren No. CA2014-05-074, 2015-Ohio-1347, to argue that the lawful presence of the police on Pettiford's porch, within the curtilage of the home, was all that was necessary to justify their warrantless entry into the home to seize the contraband. In *Young*, we held that a police officer was lawfully within the curtilage of Young's home when the officer entered the rear patio to conduct a "knock and talk." While on the patio, the officer observed a garbage can sitting on the patio with an open trash bag containing evidence of the manufacture of methamphetamine. We determined that the plain view doctrine applied to the seizure of the evidence because a "knock and talk" provided a legitimate law enforcement purpose for the officer to be within the curtilage of the home on the patio. *Young* provides an excellent

contrast to this case, illustrating the "lawful right of access to the object" element of the plain view doctrine. The evidence seized pursuant to the plain view doctrine in *Young* was outside on the patio where the officer had a right to be, thus providing the officer with a lawful right of access to the evidence. In this case, the evidence was inside the home. Although the responding officer had a right to be on Pettiford's front porch, that right did not extend to the interior of the home. "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *State v. Fletcher*, 12th Dist. Brown No. CA2016-08-016, 2017-Ohio-1006, ¶ 33.

{¶ 42} Exigent circumstances may also serve as an exception to the Fourth Amendment's warrant requirement where "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408 (1978). Thus, the establishment of exigent circumstances by the state would provide a legitimate basis for the warrantless entry into Pettiford's home. Once legitimately in the home, the police would have a "lawful right of access" to the contraband, all of the necessary elements of the plain view doctrine would be satisfied, and the warrantless seizure of the contraband would comport with the Fourth Amendment.

{¶ 43} The state did not argue exigent circumstances in the trial court or on appeal, instead relying entirely upon the plain view doctrine as justification for the entry into Pettiford's home and the seizure of the contraband. Nonetheless, the trial court found exigent circumstances, apparently related to preservation of the evidence and Pettiford's medical condition. Preservation of evidence and response to a medical emergency may serve as exigent circumstances. However, the evidence on the record does not support the existence of the exigent circumstances relied upon by the trial court in denying Pettiford's motion to suppress.

{¶ 44} The test for "[w]hether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart*, 10th Dist. Franklin No. 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). "[A] warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: '(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order.'" *Enyart* at ¶ 21, quoting *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir.2000). Other factors a court may consider in determining whether exigent circumstances existed include the degree of urgency, the time it would take to get a warrant, and the ready destructibility of the evidence. *State v. Norman*, 12th Dist. Warren No. CA2014-02-033, 2014-Ohio-5084, ¶ 51. Regarding the existence of the need to preserve evidence as an exigent circumstance, we have observed that

> Because marijuana and other narcotics are "easily and quickly hidden or destroyed," the Ohio Supreme Court has recognized that there are times where a "warrantless search may be justified to preserve evidence." However, "[n]otwithstanding the ease in which narcotics can be destroyed, a warrantless entry into the home of a suspected drug trafficker, effected without an objectively reasonable basis for concluding that the destruction of the evidence is imminent, does not pass constitutional muster." The "mere possibility of the loss or destruction of evidence is an insufficient basis for the warrantless entry of a house to prevent the destruction of evidence." Rather, there must be a "real likelihood" that the evidence is in danger of being destroyed.

(Citations omitted.) *Norman* at ¶ 52.

{¶ 45} In this case, the evidence establishes nothing beyond a "mere possibility" that third persons were present in Pettiford's home who might dispose of the contraband before the police could obtain a search warrant, thus, failing to justify the warrantless entry into Pettiford's home and the seizure of the contraband.

**{¶ 46}** Rather than securing Pettiford's home while a search warrant was obtained, the responding officer and his supervisor entered Pettiford's residence and seized the contraband, because, as the officer testified, "The evidence that we observed was in plain view and at that point we were unsure if anyone else was inside the residence."[4] The only evidence concerning the presence of third parties in Pettiford's home was the testimony of the responding officer. The officer testified at the suppression hearing that upon arrival at Pettiford's home he called into the home to announce his presence. No one responded. After the emergency services squad administered first aid to Pettiford, Pettiford refused transport to the hospital, and the police placed him in custody in a police cruiser, the officer and his supervisor again called into the residence to announce their presence. Once again, there was no response. The officer testified that he heard no sounds from Pettiford's home indicating anyone's presence. In addition to the officer's testimony, the initial report was of a single person, apparently overdosed, on the front porch of the residence, which was exactly what the officer discovered upon arrival on the scene. Furthermore, prior to the officer's entry into Pettiford's home, Pettiford was conscious and interacting with the police. Yet, the record does not reflect that the police inquired of him if others were present in the home or that he volunteered such information. Objectively, these facts, wholly lacking any indicia of a third-party presence in Pettiford's home, fail to establish a "reasonable belief" that a third party was present in the home who presented a danger of destroying the evidence.

**{¶ 47}** In *Norman*, we rejected a claim of exigent circumstances based upon a concern that other persons may have been present in a basement apartment with access to

---

4. I would not, as the majority suggests, "have the police walk away from an unsecured residence with drugs and syringes inside." The proper course would have been to secure the residence and obtain a search warrant. Though obtaining a warrant would have been inconvenient, the Fourth Amendment was intended as an inconvenience to state actors intruding upon the basic personal liberties protected by the Amendment. The responsibility of the judiciary is to insure compliance with the Fourth Amendment, not to relieve the police of the inconvenience incident to compliance.

guns and marijuana, finding that the concern was not based upon "positive, specific evidence supporting a reasonable belief." *Norman*, 2014-Ohio-5084 at ¶ 56. In finding that the state had failed to establish that a risk of the destruction of evidence justified a warrantless entry into the basement apartment, we observed,

> We find that the totality of the circumstances in this case does not support a finding of exigent circumstances as there was no basis for Velde or Workman to believe, or even suspect, that there was anyone in the basement or that there was a real likelihood that the marijuana in the basement was in danger of being destroyed. At the motion to suppress hearing, both Velde and Workman testified that the whereabouts of appellant were unknown. Although both Velde and Workman testified it was "possible" appellant was in the basement, and therefore could have been destroying evidence, neither Velde nor Workman heard any noise coming from the basement or saw anyone entering or exiting the basement. Velde admitted that she "didn't really think that there was anyone in the basement." Workman testified her sole basis for believing someone was down in the basement stemmed from the absence of the basement's second tenant, appellant, rather than from any noises or observations she made while at the scene.

*Id.* at ¶ 53.

{¶ 48} As this case and *Norman* demonstrate, it is common that the police are unable to conclusively exclude the presence of others within an area sought to be searched. Just as in this case, police will frequently be concerned in these situations that the lack of indicia that others are present is because any other such persons are unwilling or unable to reveal their presence. However, this uncertainty is not a "reasonable belief" supported by "positive, specific evidence," but rather a "concern" supported by a "possibility." Finding that the exigent circumstances exception is established upon the latter is not only contrary to well-established law, but would represent a gross expansion of the exception to include circumstances that are not truly "exigent."

{¶ 49} Neither was Pettiford's medical treatment established as an exigent circumstance. Although the trial court found that the warrantless entry into the home and the

- 16 -

seizure of the contraband was constitutional because of "medical information also as [Pettiford] was actively being treated by the squad," the record does not support this finding. First, the responding officer's sole expressed concern for immediate action was that he did not know if others were present in the residence. Neither the officer, the responding emergency medical services personnel, nor anyone else testified that there were concerns related to Pettiford's medical treatment and that seizure of the contraband was necessary to facilitate Pettiford's treatment. Furthermore, contrary to the trial court's finding that Pettiford was being "actively treated," by the time the officer and his supervisor entered Pettiford's home, Pettiford was conscious, interacting with the officer, refusing further medical treatment, and in police custody in a police cruiser. There is no evidence that Pettiford received any further medical treatment after receiving first aid from the responding emergency medical services personnel. Based upon the objective totality of the circumstances, the record does not establish that Pettiford's medical treatment was an exigent circumstance justifying the warrantless entry into Pettiford's home and seizure of the contraband.

{¶ 50} The police were lawfully present on Pettiford's porch and lawfully observed the contraband from that vantage point through the screen door. Their observations gave rise to probable cause to search and seize that visible contraband. However, their observations did not provide them with lawful access to the contraband, absent a search warrant or some exception to the Fourth Amendment's warrant requirement. Rather than securing the premises while a search warrant was obtained, the police entered Pettiford's home and seized the contraband. The record does not establish that any exception to the warrant requirement applied to justify the warrantless entry of Pettiford's home and the seizure of the contraband. I therefore find that the trial court erred in denying Pettiford's motion to suppress, and would sustain the first assignment of error, find the second assignment of error moot, and reverse and remand the matter for further proceedings.

{¶ 51}   With regard and respect for my colleagues in the majority, I dissent.