[Cite as *State v. Brittain*, 2018-Ohio-4136.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee          :    Appellate Case No. 27798
                                       :
v.                                     :    Trial Court Case No. 2017-CR-877
                                       :
COREY P. BRITTAIN                      :    (Criminal Appeal from
                                       :     Common Pleas Court)
    Defendant-Appellant         :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of October, 2018.

. . . . . . . . . . .

MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

TRAVIS KANE, Atty. Reg. No. 0088191, 1015 E. Centerville Station Road, Centerville, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Corey Brittain appeals from his conviction and sentence following a no-contest plea to three counts of aggravated drug possession. Two of the counts were fifth-degree felonies, and the other was a second-degree felony.

{¶ 2} Brittain advances two assignments of error. First, he contends the trial court erred in finding that a warrantless search of his residence was a valid search based on consent. Second, he claims the trial court erred in denying a suppression motion in which he argued that a search-warrant affidavit contained material misrepresentations in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

{¶ 3} The present appeal stems from efforts by Dayton police officers to serve an arrest warrant on October 14, 2016. The officers learned that the subject of the warrant, Katrina Spears, might be residing at 226 Pleasant Avenue. Upon approaching a house at that location, two officers were met at the front door by two children, ages thirteen and twelve. A third child, age four, also was inside the house. While speaking to the older children, the officers confirmed that Spears was their mother and that she lived at that address. (Suppression Tr. at 20, 48). The children told the officers that Spears was not home and that no adults were in the house. (*Id.* at 20-21, 33, 45-46, 54). The children also stated that they had no way of contacting Spears, who had left roughly two hours earlier without telling them where she was going. (*Id.* at 45-46). While standing outside the door, the officers noticed that the home was "very messy" inside, and they were concerned about children being home without adult supervision. (*Id.* at 20-22, 45-46). The officers then asked the children for permission to enter the home. (*Id.* at 47). One of the two officers asked if they could come inside to look for Spears or another adult. They said

that Spears was "wanted" and that they desired to be sure she was okay. (*Id.* at 22, 36-37, 41-42, 54). The children consented to the officers entering the home. (*Id.* at 37, 60). Once inside, the officers saw a baggie of apparent methamphetamines on a stand next to a television, marijuana on a table, and "random bullets laying around." (*Id.* at 24, 47). These items were in plain view "[i]n the room where it appeared where the children were spending their time[.]" (*Id.* at 24, 38). As a result, the officers took the children outside. They also proceeded through the rest of the house looking for any adult. (*Id.* at 47-48). The officers then secured the residence. (*Id.* at 50). While they were waiting outside, Brittain arrived and informed them that the house was his. (*Id.* at 51-52). The officers proceeded to provide a detective with information for a search warrant, which was obtained and executed. (*Id.* at 50). While executing the warrant, the officers found additional drugs and drug-related evidence. (Inventory, attached to Doc. # 25).

{¶ 4} Following his arrest and indictment, Brittain moved to suppress the evidence against him, arguing that the officers unlawfully had entered the home. He also asserted that the search warrant ultimately obtained was predicated on an affidavit that contained intentionally false statements or material omissions in violation of *Franks*. Following a hearing, the trial court found no basis for suppression. It held that the children's consent to enter the home was valid and that the police were lawfully present to readily observe the drugs. It also held that the search-warrant affidavit did not violate *Franks*. (Doc. #43). Brittain subsequently pled no contest to the three counts of aggravated drug possession set forth above. The trial court accepted the plea and made a finding of guilt. It imposed concurrent sentences totaling two years in prison.

{¶ 5} In his first assignment of error, Brittain challenges the lawfulness of the

officers' warrantless entry into his home. He asserts that the consent they obtained was not voluntary because they used deception to obtain it. His entire substantive argument is as follows:

> In the present case, Officer Gundelfinger testified he knocked on the front door of the home and made contact with two children, ages 12 and 13. (Tr. 19-20). He then asked for permission from the children to enter the home in order to make sure their mother was okay. (Tr. 37). The children gave permission and the officers entered. (*Id.*). Officer Gundelfinger also testified that the only reason they were at that location was to serve an arrest warrant for Katrina Spears. (Tr. 30). Therefore the officers used deception in order to obtain consent from these children. The officers misrepresented their purpose for entering the home and took advantage of the fact that the persons giving consent were young and facing two uniformed officers. At this point, there was no evidence of any criminal activity and there was no need for any type of police intervention. Officer Gundelfinger testified there is no law against children that age babysitting and there was no reason to arrest Katrina Spears for child endangering. (Tr. 35). Therefore, there was no reason to enter the home to look for an adult. The officers used that as a pretext to get consent from the children.
>
> The trial court relied on the testimony of Officer Gundelfinger indicating the house was messy and the children had no way to contact their mother as a sufficient basis to enter the home. (Decision 5-6). However, this contradicts his testimony that no law had been broken by leaving these

children with no adult present. A messy home does not rise to the level required for a warrantless search. As such, the children were not informed the police wanted to enter the residence to effectuate a search warrant but were informed they wanted to enter the home to make sure their mother was okay. This is a deliberate misrepresentation of their purpose for entering.

(Appellant's brief at 6).

{¶ 6} As a threshold matter, we note that Brittain does not challenge the children's general capacity to consent to the entry into the home. Therefore, we need not resolve that issue—one on which courts have reached differing conclusions under different circumstances. *Compare United States v. Clutter*, 914 F.2d 775, 778 (6th Cir.1990) ("Under the circumstances of this case, where children twelve and fourteen years of age routinely were left in exclusive control of the house, and defendants' possession of large quantities of marijuana was so open and patently non-exclusive that its odor pervaded the house, the government satisfied its burden of demonstrating the initial warrantless search of the bedroom was by consent[.]"); *City of Columbus v. O'Hara*, 10th Dist. Franklin No. 85AP-1036, 1986 WL 9530, *2 (Aug. 28, 1986) (Evidence suppressed when "alleged consent was by a twelve-year-old boy in a somewhat equivocal manner* * *. Only under exceptional circumstances could it be inferred that a twelve-year-old child has the capacity and authority to consent to a search of the child's parent's home by the police with a view toward obtaining evidence of the commission of a crime."). Rather, Brittain's specific objection is to the alleged use of deception to obtain consent. He claims the officers misrepresented their reason for wanting to enter the home, thereby negating the

validity of the consent they received.

{¶ 7} This court has recognized that "[a] warrantless search of a house is valid * * * if authorized by voluntary consent from a person with authority to give consent." *City of Oakwood v. Idell*, 2d Dist. Montgomery No. 16320, 1997 WL 724666, *3 (Nov. 21, 1997). But consent to search obtained through deception has been deemed not freely and voluntarily given. *Ohio Dept. of Liquor Control v. Fraternal Order of Eagles Aerie 2293*, 112 Ohio App.3d 94, 98-99, 667 N.E.2d 1254, (10th Dist.1996); *State v. Hickson*, 69 Ohio App.3d 278, 280, 590 N.E.2d 779 (8th Dist.1990). In *Hickson*, officers misrepresented why they wanted to look out the defendant's kitchen window. They falsely told her they wanted to look "into the courtyard for something." *Hickson* at 279. In reality, while standing in the courtyard, they already had observed marijuana in another window and wanted to confirm that this other window was in the defendant's apartment. *Id*. On appeal, the Eighth District affirmed the trial court's finding that the defendant's consent was not freely and voluntarily given because it was obtained through deception regarding the officers' reason for wanting to look out the kitchen window. *Id*. at 280.

{¶ 8} In the present case, however, we seen no impermissible deception regarding the officers' reason for wanting to enter Brittain's home. The officers testified that they requested permission to come inside the home to look for the children's mother or another adult. This was an accurate statement because it was exactly what the officers wanted to do, and exactly what they did. One of the officers even testified that he believed he told the children that their mother was "wanted." (Suppression Tr. at 54). But regardless of whether the officers explained why they wanted to locate the children's mother, the fact remains that they truthfully requested permission to enter the house to search for her or

another adult. Having found no improper deception, we overrule Brittain's first assignment of error.

{¶ 9} In his second assignment of error, Brittain challenges the trial court's finding that the probable-cause affidavit did not contain material misrepresentations. He contends the affidavit misrepresented the officers' reason for wanting to enter the home. Specifically, he claims the officers testified at the suppression hearing about wanting to enter the home to conduct a welfare check and to see whether any adults were present, whereas the affidavit stated that the officers sought to enter the home to locate and arrest Katrina Spears. Brittain further claims the affidavit failed to mention that the residents of the home were twelve and thirteen years old or that they were told the officers wanted to see whether their mother was okay.

{¶ 10} "Pursuant to *Franks*, a search violates the Fourth Amendment's prohibition on unreasonable searches if it is conducted pursuant to a warrant that is based upon an affidavit containing one or more material misrepresentations, and these misrepresentations were made knowingly or in reckless disregard for the truth." (Citations omitted.) *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, ¶ 12. " 'Reckless disregard' means that the affiant had serious doubts of an allegation's truth. * * * Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.' " (Citations omitted.) *Id.* " '[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.' " (Citation omitted.) *State v. Blaylock*, 2d Dist. Montgomery

No. 24475, 2011-Ohio-4865, ¶ 15.

{¶ 11} Here we see no material misrepresentations in the challenged affidavit. With regard to the officers' entry into the home, the affidavit stated: "While at 226 Pleasant Avenue, Sergeant Setty reported he spoke to the residents of 226 Pleasant Avenue. Sergeant Setty reported the residents confirmed Spears lived at 226 Pleasant Avenue and gave the Officers permission to enter the residence in an attempt to locate Spears." (Affidavit, attached to Doc. #25). We see no misrepresentation in this aspect of the affidavit. The trial court noted that "Sergeant Setty specifically testified that there is nothing contained in Detective St. Clair's affidavit that he did not tell Detective St. Clair." (Doc. #43). The affidavit did not specify what the officers told the occupants of the house regarding their motive for seeking Spears, but such an omission was not critical information to a finding of probable cause. On this record, the fact that the occupants were twelve and thirteen years old also was not critical information.

{¶ 12} Brittain also argues that the affidavit failed "to mention the police entered the home for any other reason than to look for Katrina Spears, the consent obtained was to search for an adult only, the police had no reason to believe Katrina Spears was present in the home, and they saw no evidence of any criminal activity prior to entering the home." (Appellant's brief at 7). But the record contains testimony of the officers that they specifically requested permission to enter the home in order to look for Spears or any other adult. Although they testified that they also had a concern for the children's safety, that concern does not relate to the issue of consent. With regard to Spears' presence, the officers testified that they thought they she might be present because she lived there and the children might have been lying about her absence. As for the lack of

evidence of criminal activity prior to entry, the affidavit did not suggest otherwise. In any event, we are unconvinced that the various omissions cited by Brittain were either misleading or were critical information to the finding of probable cause. For the foregoing reasons, the trial court correctly found no *Franks* violation. The second assignment of error is overruled.

{¶ 13} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .


FROELICH, J., concurs.

DONOVAN, J., concurring:

{¶ 14} It is regrettable that we cannot reach the "threshold" issue of a child's "general capacity" to consent. However, I agree with the majority, it was not raised below either in the written motion to suppress or in the post-hearing briefing. Hence, on this record, I must concur.


Copies mailed to:

Mathias H. Heck
Michael P. Allen
Travis Kane
Hon. Gregory F. Singer